Steven J. Nataupsky (155,913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (156,511)
lynda.zadra-symes@knobbe.com
Sean M. Murray (213,655)
sean.murray@knobbe.com
Matthew S. Bellinger (222,228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Alexander Zeng (317,234)
alexander.Zeng@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Attorneys for Defendant
MONSTER ENERGY COMPANY

Kenneth C. Brooks (SBN 167,792)
kcb@brookspatents.com
LAW OFFICES OF KENNETH C.
BROOKS
5329 Thunder Ridge Circle
Rocklin, California 95765
Phone: (408) 368-7997
Facsimile: (877) 730-4315

Attorneys for Plaintiff
OUTDOOR PRO SHOP, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| OUTDOOR PRO SHOP, INC., <br><br> Plaintiff, <br><br> v. <br><br> MONSTER ENERGY COMPANY, <br><br> Defendant. | No.  5:20-CV-05999-BLF <br><br> Hon. Beth Labson Freeman <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Case Management Conference: <br> Date:        June 17, 2021 <br> Time:       11:00  a.m. <br> Location:   Courtroom No. 3 |

Pursuant to Fed. R. Civ. P. 26(f), Civil L.R. 16-10(d), the "Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement," and the Clerk's Notice Resetting Case Management Conference dated January 19, 2021 (Dkt. 10), Plaintiff Outdoor Pro Shop, Inc. ("OPS") and Defendant Monster Energy Company ("Monster")[1], submit the following Joint Case Management Statement.

1. **JURISDICTION AND SERVICE**

The parties do not challenge personal jurisdiction, subject matter jurisdiction, or venue, and all parties have been properly served.

2. **FACTS**

A. **Brief Chronology of Facts**

**Plaintiff's Position:**

In 1993, OUTDOOR PRO SHOP, INC., (OPS) opened its doors to one of the largest groups of outdoor recreational enthusiasts: recreational fishermen.  In 2019 it is estimated that over 50,000,000 individuals in the United States participates in recreation fishing in an industry that generates in excess of $9,000,000,000 (billion) yearly.  OPS being one of the first businesses to advertise and sell goods and offer services related to outdoor sports related activities, such as fishing, boating and the like it has one of the largest online presence of goods and service offered on-line in that market.  Selling both locally and globally, OPS has its principle place of business located at 412 Houser St., Cotati California 94931 where it has a retail store and does a substantial amount of business through its Internet website http://www.outdoorproshop.com/.  OPS markets and advertises one of its principle brands MONSTER FISHING TACKLE throughout the globe both online, in

---

[1] Outdoor Pro Shop, Inc. objects to the use of the term "MONSTER" when referring to Monster Energy Company (MEC), because that OPS contends, misleads to court into identify MEC with a trademark "MONSTER" which just is not the case.  MEC is known by the special form mark MONSTER with the multiple spaced-apart serpentine lines.

magazines and by being prominently featured in some of the most prestigious fishing competitions around the globe.

Monster Energy Company (MEC) filed several oppositions to OPS marks and establishing several admission that OPS marks create a likelihood of confusion with respect to goods sold by MEC and marks used by MEC in connection therewith. Dkt. No. 1 at ¶¶ 9-11. Based upon said admissions by MEC OPS filed the instant lawsuit to, *inter alia*, seek a declaration of infringement or non-infringement presented by the marks used by the respective parties.

It is OPS's contention that MEC has recognized the importance of acquiring rights in the term MONSTER as it has set about filing multiple lawsuits in the last several years to that end. Having recently had a jury verdict returned indicating that MEC has no common law rights in the mark "MONSTER". *Monster Energy Company v. Integrated Supply, LLC.* Central District of California Case number 5:17-CV-00548. It is OPS' contention that MEC seeing the value of the fishing market now seeks complete domination of the term MONSTER across many industries vis-a-vis control of the mark as used in connection with certain goods.

**Defendant's Position:**

In 2002, Monster launched its original energy drink bearing its now-famous MONSTER ENERGY® mark. Monster sells roughly 2.5 billion beverages per year in the United States alone, with an estimated retail value of over $6 billion per year. Monster's trademarks are famous throughout the world and are used worldwide on beverages, beverage ware, apparel, sports equipment and other products.

OPS is in the business of "selling goods and offering services used in outdoor sports related activities, such as fishing, boating and the like." Dkt. No. 1 at ¶ 4. OPS has a retail store in Cotati, California and also does business over the internet. *Id.* OPS claims to sell fishing products as well as books, clothing, footwear, camping equipment, watches, eye glasses, cups, binoculars, and gift novelties. OPS marks many of its products with the mark MONSTER or MONSTER FISHING TACKLE.

On April 6, 2020, Monster filed Opposition No. 91255229 in the Trademark Office against various OPS trademark applications.  On August 26, 2020, OPS filed the complaint in this case.  The complaint asserts three causes of action based on alleged trademark infringement and a claim for a declaration of non-infringement of Monster's trademarks.

On January 19, 2021, Monster filed a motion to dismiss OPS's trademark claims under Rule 12(b)(6) because they fail to plausibly allege trademark infringement.  Dkt. <u>No</u>. 31.  Monster's motion to dismiss is based on two grounds.  First, OPS failed to allege that its marks are distinctive.  Second, OPS failed to allege dates of first use for its asserted marks.  OPS opposed the motion and Monster filed its reply.  The motion to dismiss is therefore for ripe for decision.

**B.     Principal Factual and Legal Issues in Dispute**

**<u>Plaintiff's Position</u>**

<u>Identifying Indicia</u>:  Establishing the indicate (words/images) in which MEC claims trademark rights, both common law and under the Lanham Act, is necessary.  MEC has been unclear in the terms in which it claims to have proprietary rights.  It is manifest that an exhaustive list of present and future terms in which it seeks trademark rights will have to be articulated.

<u>Classes of Goods/Services</u>.  Once the indicia in which MEC claims rights has been established a detailed inquiry as to the goods and/or services in which said indicia is used in connection therewith will have to be established.

<u>Priority of Use</u>: The third element of a trademark is priority of use of the indicia used in connection with the goods/services.  This will require a detailed analysis of the geographic region in which said use occurred coupled with the the date of said use.  Understanding that OPS pre-dates the existence of MEC, it is not unforeseen that OPS and MEC will have concurrent rights in marks in different geographic regions.

1    <u>Likelihood of Confusion</u>.   Based upon admissions made by MEC in
2  Opposition filed with the Trademark Trial and Appeal Board of the United States
3  Trademark Office that prompted the instant lawsuit, it is presumed that there is a
4  likelihood of confusion.   However, OPS does not yet know the extent of the
5  intrusions of MEC into channels of commerce in which OPS has historically and
6  traditionally operated. Caffeinated sugar water is believed to consist of channels of
7  commerce that are very different and do not overlap with those of traditional fishing
8  participants, unless MEC has started to sale beverages including alcohol.

9    <u>Damages</u>:  Another disputed factual issue is whether either party has suffered
10  monetary damages and in what amount.

11    <u>Injunctive Relief</u>:  It is beyond dispute that injunctive relief can be granted
12  under the Lanham is there is a likelihood of confusion.  This would be, if for no other
13  reason, than to protect the purchasing public, which is one of the core goals of the
14  Lanham Act in regard to trademarks.

15    **Defendant's Position**

16    <u>Trademark Priority</u>.  A critical factual issue in this case will be trademark
17  priority.   Monster has been using its MONSTER trademarks in commerce for
18  approximately two decades.  OPS's complaint nowhere discloses the date it first
19  used each of its marks in commerce.  The complaint only contains conclusory
20  allegations that it used its marks before Monster used its own trademarks.

21    <u>Likelihood of Confusion</u>.  If Monster is required to serve an answer in this
22  case, Monster expects that it will assert counterclaims for trademark infringement
23  under federal and state law.  The parties therefore agree that there is a likelihood of
24  confusion.  However, a significant issue in the case will the circumstances in which
25  confusion is likely. Likelihood of confusion has been characterized as a mixed
26  question of law and fact, or as an issue of law that depends on underlying factual
27  issues.  Among those subsidiary issues are the strength of the parties' marks, the
28  similarity of the marks as used in commerce, and the similarity of the parties' goods.

1  <u>Damages</u>.  Another disputed factual issue is whether either party has suffered
2  monetary damages and in what amount.

3  <u>Injunctive Relief</u>.   Another disputed legal issue is whether a party that
4  establishes both trademark priority and a likelihood of consumer confusion is
5  entitled to an injunction barring or limiting the other party's use of its marks.

6  **3.     STATUS OF MOTIONS**

7  Monster's motion to dismiss pursuant to Rule 12(b)(6) is pending and is ripe
8  for decision.  The hearing on the motion is set for June 17, 2021 at 9:00 a.m. in
9  Courtroom 3.

10 **4.     AMENDMENTS OF PLEADINGS**

11 Because Monster's motion to dismiss is pending, Monster has not served an
12 answer.  The parties do not anticipate amendments to the pleadings and propose a
13 September 24, 2021 deadline to file all motions to amend pleadings and/or join
14 additional parties.

15 **5.     EVIDENCE PRESERVATION**

16 The parties confirm that each has reviewed the "Guidelines Relating to the
17 Discovery of Electronically Stored Information."  The parties confirm that they met
18 and conferred in the Rule 26(f) conference, at which time counsel for each party
19 confirmed that reasonable steps are being taken for the preservation of electronically
20 stored information ("ESI"), and neither party anticipates any issues arising affecting
21 the ability to preserve ESI.

22 **6.     DISCLOSURES**

23 The parties had their Rule 26(f) conference on May 25, 2021, and they intend
24 to serve initial disclosures before the Initial Case Management Conference on June
25 17, 2021.

26 **7.     DISCOVERY**

27 **A.     Discovery Taken**

28 No discovery has been taken in this proceeding.

1

2

### B.    Scope of Anticipated Discovery

**Plaintiff's Position**

OPS anticipates that, if the case proceeds on the merits, discovery would be needed on at least the following:  (1) MEC's use of its marks; (2) products and services allegedly offered in commerce bearing the MEC's marks; (3) advertisements and promotional materials for any products or services bearing MEC's marks; (4) instances of confusion or mistake between the parties and/or their respective marks; (5) financial information, such as profits, revenues, advertising expenditures under MEC's marks; (6) duration of use of MEC's marks; (7) channels of trade for any products or services bearing MEC"s marks; (8) MEC's customers and targeted customers for products or services bearing its marks, as well as (9) future markets and channels of trade into which MEC will participate with the marks at issue.

**Defendant's Position**

Monster anticipates that, if the case proceeds on the merits, discovery would be needed on at least the following: (1) OPS's use of its marks; (2) products and services allegedly offered in commerce bearing the OPS's marks; (3) advertisements and promotional materials for any products or services bearing OPS's marks; (4) instances of confusion or mistake between the parties and/or their respective marks; (5) financial information, such as profits, revenues, advertising expenditures under OPS's marks; (6) duration of use of OPS's marks; (7) channels of trade for any products or services bearing OPS's marks; (8) OPS's customers and targeted customers for products or services bearing its marks.

### C.    Proposed Limitations or Modifications of the Discovery Rules

The parties agree that a protective order should be entered in this action to protect against the public disclosure of proprietary information obtained during discovery.  The parties plan to submit a proposed stipulated protective order for the Court's approval.   The parties do not believe that any limitations or modifications

to the discovery rules are necessary at this time, but each may later ask to raise that issue with the Court if it becomes necessary.

### D. E-Discovery Considerations

The parties plan to meet and confer with regard to a procedure for identifying and producing ESI. The parties plan to submit to the Court a proposed stipulated e-discovery order or address ESI in a section of the proposed protective order.

### E. Proposed Discovery Plan

The parties agree that discovery should be governed by the Federal Rules of Civil Procedure. The parties further agree that there should be no limits on discovery other than those imposed by the Federal Rules of Civil Procedure (subject to any party's right to seek relief in response to particular requests). The parties propose a schedule for fact and expert discovery in the "Schedule" portion of this filing.

### F. Discovery Disputes

To date, the parties have not identified any discovery disputes.

## 8. CLASS ACTIONS

This matter is not a class action.

## 9. RELATED MATTERS

On April 6, 2020, Monster filed Opposition No. 91255229 in the Patent and Trademark Office to oppose Plaintiff's applications to register its Monster Fishing Tackle mark, a stylized version of the mark "Monster," and related marks. On October 2, 2020, the Trademark Trial and Appeal Board suspended the opposition in view of this litigation.

## 10. RELIEF SOUGHT

OPS seek declaratory relief as to the extent and infringing activities of its marks by MEC and if any such infringement is found that this Court enjoin MEC from infringing OPS' marks and award any monetary damages to OPS resulting from the infringement by MEC of OPS's marks, according to proof.

If Monster files an answer in this case, it will file counterclaims including counterclaims for trademark infringement.  If that occurs, Monster will request appropriate relief from the Court.

**11.  SETTLEMENT AND ADR**

The parties hope that an amicable resolution can be reached despite the parties' inability to reach such a resolution so far.

The parties confirm that they have complied with L.R. 3-5 for the selection of an ADR process.  The parties agree that "Private ADR" is the preferred ADR process.  The parties agree that they will propose to each other potential third-party mediators and attempt in good-faith to agree on an individual.

The parties propose January 14, 2022, as the deadline to complete the mediation.  The parties have not identified any information whose disclosure prior to the mediation would be helpful, but the parties agree to confer as such issues arise. Each party and its counsel have signed and filed the ADR Certification form.

**12.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties have not consented to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**13.  OTHER REFERENCES**

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.  NARROWING OF ISSUES**

The parties do not believe that there are issues which can, or need be, narrowed.  Nor do they currently believe that it is, or will become, necessary to bifurcate issues, claims, or defenses.

**15.  EXPEDITED TRIAL PROCEDURE**

The parties do not believe this case is the type of case that can or should be handled under the Expedited Trial Procedure of General Order No. 64 Attachment.

**16.  SCHEDULING**

The parties propose the following schedule for this dispute:

| Scheduled Event | Proposed Schedule |
|---|---|
| Case Management Conference and Motion to Dismiss Hearing | June 17, 2021 |
| Last Day to Amend Pleadings/Add Parties | September 24, 2021 |
| Deadline to Complete ADR | January 14, 2022 |
| Close of Fact Discovery | March 18, 2022 |
| Opening Expert Reports Due | April 22, 2022 |
| Rebuttal Expert Reports Due | May 20, 2022 |
| Close of Expert Discovery | June 17, 2022 |
| Last Day to File Dispositive Motions | July 22, 2022 |
| Hearing on Dispositive Motions | October 20, 2022 |
| Final Pretrial Conference | December 1, 2022 |
| Trial | December 12, 2022 |
| Length of Trial | 5 days |

**17.  TRIAL**

OPS has demanded a jury.  The expected length of trial is 5 days.

**18.  DISCLSOURE OF INTERESTED ENTITIES OR PERSONS**

OPS has filed the Rule 7.1 Certification of Interested Entities or Persons" required by Civ. L.R. 3-15 with the initial complaint.

Monster has filed the Rule 7.1 Certification of Interested Entities or Persons required by Civ. L.R. 3-15.  Monster reiterates that, pursuant to Civ. L.R. 3-15, as of this date, other than the named parties, there is no such interest to report.

1

**19.   PROFESSIONAL CONDUCT**

2

All attorneys of record for OPS and Monster confirm that they have reviewed

3

the Guidelines for Professional Conduct for the Northern District of California.

4

Respectfully submitted,

5

KNOBBE, MARTENS, OLSON & BEAR, LLP

6

7

Dated: __June 2, 2021__          By: */s/ Alexander D. Zeng/*

8

Steven J. Nataupsky

9

Lynda J. Zadra-Symes
Sean M. Murray

10

Matthew S. Bellinger
Alexander Zeng

11

Attorneys for Defendant

12

MONSTER ENERGY COMPANY

13

14

15

THE LAW OFFICES OF KENNETH C. BROOKS

16

17

Dated: __June 2, 2021__          By: */s/ Kenneth C. Brooks*

Kenneth C. Brooks

18

Attorneys for Plaintiff

19

OUTDOOR PRO SHOP, INC.

20

21

22

23

**ATTESTATION OF E-FILED SIGNATURE**

24

I, Alexander Zeng, attest that all signatories listed above have read and

25

approved this stipulation and consent to the filing of same in this action.

26

27

Dated: __June 2, 2021__          By: */s/ Alexander Zeng*

Alexander Zeng

28