Steven J. Nataupsky (155,913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (156,511)
lynda.zadra-symes@knobbe.com
Sean M. Murray (222,228)
sean.murray@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Alexander Zeng (317,234)
alexander.zeng@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

*Attorneys for*
*Defendant-Counterclaimant MONSTER ENERGY COMPANY*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| OUTDOOR PRO SHOP, INC., | Civil Action No.  5:20-CV-05999-BLF |
| Plaintiff, | Hon. Beth Labson Freeman |
| v. | **DEFENDANT MONSTER ENERGY COMPANY'S ANSWER AND COUNTERCLAIMS** |
| MONSTER ENERGY COMPANY, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |
| MONSTER ENERGY COMPANY, | |
| Counterclaimant, | |
| v. | |
| OUTDOOR PRO SHOP, INC., | |
| Counter-Defendant. | |

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant Monster Energy Company ("Monster") hereby answers the complaint of Plaintiff Outdoor Pro Shop, Inc. ("OPS"), asserts counterclaims against OPS, and demands a jury trial. Certain headings in the complaint are restated solely for ease of reference.

### JURISDICTION, VENUE AND INTRA-DISTRICT ASSIGNMENT

1.      Monster admits that the Court has jurisdiction over OPS's claims.

2.      Monster lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 2 of the Amended Complaint and on that basis denies them.

3.      Monster admits that "the Complaint concerns intellectual property and . . . unfair competition based upon Common Law trademark infringement," but denies any grounds exist for OPS's claims. Monster lacks sufficient knowledge or information to form a belief as to the truth or falsity of the paragraph's remaining factual allegations and, on that basis, denies them.

### PARTIES

4.      Monster admits OPS has a website located at http://www.outdoorproshop.com. Monster lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 4 of the Amended Complaint and on that basis denies them.

5.      Monster admits that it is a corporation with a principal place of business at 1 Monster Way, Corona California, and that it sells energy drinks throughout the world. Monster denies the remaining allegations in Paragraph 5 of the Amended Complaint.

### FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

6.      Monster admits that OPS filed trademark applications with the application numbers, filing dates and international classes listed in the chart in Paragraph 6 of the Amended Complaint. Monster denies that the chart contains complete recitations of the goods and services in those applications.   Monster lacks sufficient knowledge or information to form a belief as to the truth or falsity of the paragraph's remaining factual allegations and on that basis denies them.

7.      To the extent that Paragraph 7 of the Amended Complaint contains factual allegations, Monster lacks sufficient knowledge or information to form a belief as to the truth or falsity of those allegations and on that basis denies them.

8.      Monster admits that the trademark applications listed in Paragraph 8 of the Amended Complaint are the subject of an opposition proceeding in the USPTO.  Monster lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 8 of the Amended Complaint and on that basis denies them.

9.      Monster admits the accuracy of the numerical information (dates, international class numbers and registration numbers) in the chart in Paragraph 9 of the Amended Complaint. That information is a matter of public record.  Monster admits that there is a likelihood of confusion between certain of the parties' Monster-branded goods and services.  Monster admits that in the opposition proceedings it has alleged that there is a likelihood of confusion between certain of the parties' Monster-branded goods and services.  Monster denies that it is responsible for any confusion.  Monster also denies the remainder of the paragraph because it consists of inaccurate characterizations of the opposition proceeding.

10.     Monster denies the allegations in Paragraph 10 of the Amended Complaint.

11.     Monster denies the allegations in Paragraph 11 of the Amended Complaint.

**FIRST CLAIM**
**FEDERAL UNFAIR COMPETITION**
**(False Designation of Origin and False Description)**
**(15 U.S.C. § 1125(a); Lanham Act§ 43(a))**

12.     Monster incorporates its responses to Paragraphs 1-11 of the Amended Complaint as if fully set forth herein.

13.     Monster denies the allegations in Paragraph 13 of the Amended Complaint.

14.     Monster denies the allegations in Paragraph 14 of the Amended Complaint.

**SECOND CLAIM**
**COMMON LAW TRADEMARK INFRINGEMENT**

15.     Monster incorporates its responses to Paragraphs 1-14 of the Amended Complaint as if fully set forth herein.

16.     Monster denies the allegations in Paragraph 16 of the Amended Complaint.

17.     Monster denies the allegations in Paragraph 17 of the Amended Complaint.

18.     Monster denies the allegations in Paragraph 18 of the Amended Complaint.

**THIRD CLAIM
CALIFORNIA UNFAIR COMPETITION
(Cal. Bus. & Prof. Code § 17200)**

19.     Monster incorporates its responses to Paragraphs 1-18 of the Amended Complaint as if fully set forth herein.

20.     Monster denies the allegations in Paragraph 20 of the Amended Complaint

21.     Monster denies the allegations in Paragraph 21 of the Amended Complaint.

**FOURTH CLAIM FOR RELIEF
(Declaratory Judgement of Non-Infringement of Federally Registered Trademarks and no-Unfair Competition)**

22.     Monster incorporates its responses to Paragraphs 1-21 of the Amended Complaint as if fully set forth herein.

23.     Paragraph 23 of the Amended Complaint does not contain factual allegations. Monster denies that OPS is entitled to the declaratory relief referenced in Paragraph 23.

24.     Paragraph 24 of the Amended Complaint does not contain factual allegations. Monster denies that OPS is entitled to the declaratory relief referenced in Paragraph 24.

25.     Paragraph 25 of the Amended Complaint does not contain factual allegations. Monster denies that OPS is entitled to the declaratory relief referenced in Paragraph 25.

26.     Paragraph 26 of the Amended Complaint does not contain factual allegations. Monster denies that OPS is entitled to the declaratory relief referenced in Paragraph 26.

**PRAYER FOR JUDGMENT**

27.     Monster denies that OPS is entitled to the relief it seeks in Paragraphs 27-37 of the Amended Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

28.     Monster asserts the following Affirmative Defenses, without assuming the burden of proof for any defense.  Monster has insufficient information to determine whether it may have yet unstated defenses.  Monster reserves the right to revise, supplement, or amend its Answer to OPS's pleading, including by raising any defense permitted under the Federal Rules of Civil Procedure, whose existence is revealed through discovery or further investigation in this case.

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

29.     OPS's claims are wholly or partly barred by the applicable statute of limitations.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

30.     OPS's claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Acquiescence/Waiver)

31.     OPS acquiesced in Monster's use of its trademarks.  OPS's claims are therefore barred, in whole or in part, by the doctrines of acquiescence and/or waiver.

## FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

32.     OPS's claims are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE
### (Abandonment)

33.     OPS has abandoned one or more of the asserted trademarks at least by discontinuing using the marks without an intent to resume using them.

## SIXTH AFFIRMATIVE DEFENSE
### (No Injury)

34.     OPS's claims are barred, in whole or in part, because OPS has suffered no injury, and certainly no irreparable injury, caused by any alleged act of Monster.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

35.     OPS's claims for relief fail to state a clam upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Damages)

36.     OPS has not been damaged in any amount by any alleged act in the Amended Complaint, and therefore the damages requested in that complaint cannot be granted.

## MONSTER ENERGY COMPANY'S COUNTERCLAIMS

Defendant and Counterclaimant Monster Energy Company ("Monster") brings the following counterclaims against Plaintiff and Counter-Defendant OPS and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for (1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), (2) trademark infringement under 15 U.S.C. § 1114, (3) California common law unfair competition, (4) state trademark infringement under California Business & Professions Code § 14245; and (5) unfair competition under California Business & Professions Code §§ 17200 *et seq.*

2. The Court has original subject matter jurisdiction over Monster's claims that relate to trademark infringement and false designation of origin pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court has personal jurisdiction over OPS because OPS is domiciled and has a principal place of business in the State of California. Additionally, OPS is subject to the personal jurisdiction of this Court because it has committed acts of trademark infringement, false designation of origin, and unfair competition in this judicial district, including by using infringing marks in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods and services to customers in this district. OPS's acts form a substantial part of the transactions, occurrences, events or omissions giving rise to Monster's claims.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) at least because OPS resides in this district by virtue of doing business within the district, and because a substantial portion of the events complained of herein took place in the district. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because OPS has submitted to this Court's jurisdiction by filing its Complaint and Amended Complaint.

**THE PARTIES**

5.      Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.      As stated in Paragraph 4 of the Amended Complaint, OPS is a corporation organized and existing under the laws of the State of California, and having a place of business at 412 Houser St., Cotati, California 94931.

**FACTUAL BACKGROUND**

A.      **Monster and Monster's Trademarks**

7.      Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its extensive sales and its marketing and promotion of the brand.

8.      In 2002, long before OPS's alleged first-use-in-commerce dates in Paragraph 6 of the Amended Complaint, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER ENERGY® marks.   Images of Monster's original MONSTER ENERGY® drink, which Monster has sold continuously since 2002 and which bears the MONSTER ENERGY® mark, are shown below.



9.      Since at least 2002, long before the use of OPS's asserted marks shown in Paragraph 6 of the Amended Complaint, Opposer has been, and still is, engaged in the development, licensing, marketing, and/or sale of beverages, beverage ware, clothing, bags, decals, and hats, as well as many other goods and services, under the marks MONSTER™ and MONSTER ENERGY®, and related marks, all containing "MONSTER."  Opposer's family of

MONSTER marks includes, for example, the following: MONSTER™, MONSTER ENERGY®, M MONSTER ENERGY®, and ⫸MØNSTER ®.   Monster is the owner of many U.S. Trademark Registrations including, for example, the following:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY® | 3,044,315 | "Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 5 (first use in commerce: April 18, 2002) | May 23, 2003 | January 17, 2006 |
| MONSTER ENERGY® | 4,036,680 | "Nutritional supplements in liquid form" in International Class 5 (first use in commerce: April 18, 2002) | September 11, 2007 | October 11, 2011 |
| MONSTER ENERGY® | 4,036,681 | "Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy" in International Class 32 (first use in commerce: April 18, 2002) | September 11, 2007 | October 11, 2011 |
| MONSTER ENERGY® | 3,057,061 | "Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first use in commerce: April 18, 2002) | April 18, 2002 | February 7, 2006 |
| M MONSTER ENERGY® | 3,044,314 | "Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 5 (first use in commerce: April 18, 2002) | May 23, 2003 | January 17, 2006 |
| M MONSTER ENERGY® | 3,134,842 | "Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, | May 7, 2003 | August 29, 2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first use in commerce: April 18, 2002) | | |
|  | 3,134,841 | "Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first use in commerce: April 18, 2002) | May 7, 2013 | August 29, 2006 |
|  | 3,908,601 | "Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies" in International Class 25 (first use in commerce date:  June 30, 2002) | April 2, 2009 | January 18, 2011 |
|  | 3,908,600 | "Stickers; sticker kits comprising stickers and decals; decals" in International Class 16 (first use in commerce date: January 2004) | April 2, 2009 | January 18, 2011 |
|  | 3,914,828 | "Sports helmets" in International Class 9 (first use in commerce date: January 2006) | April 2, 2009 | February 1, 2011 |
|  | 4,332,062 | "Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands" in International Class 14 (first use in commerce date: December 2006) | October 5, 2012 | May 7, 2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,923,683 | "All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags" in International Class 18 (first use in commerce date: May 2004) | April 2, 2009 | February 22, 2011 |
|  | 4,660,598 | "Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences" in International Class 22 (first use in commerce date: December 20, 2006) | August 26, 2013 | December 23, 2014 |
| MONSTER ENERGY® | 5,820,689 | "Sport helmets; video recordings featuring sports, extreme sports and motor sports; downloadable software for mobile devices for playing games; downloadable electronic game software for use on mobile devices; downloadable game software; downloadable interactive game programs; downloadable video game software and programs" in International Class 9 (first use in commerce date:  June 30, 2002);

"Beverageware; insulated beverage containers for domestic use; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers" in International Class 21 (first use in commerce date: January 2005);

"Lanyards; lanyards for holding whistles, keys, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences; tents" in International Class 22 (first use in commerce date:  December 20, 2006);

"Towels; blankets for outdoor use" | January 15, 2019 | July 30, 2019 |

DEFENDANT'S ANSWER & COUNTERCLAIMS          Case No.: 5:20-CV-05999-BLF

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | in International Class 24 (first use in commerce date:  July 2003);<br><br>"Clothing, namely, Tops, shirts, t-shirts, sweat shirts, jackets, bottoms, pants, bandanas, sweat bands, gloves; headwear; hats; beanies" in International Class 25 (first use in commerce date:  May 24, 2002);<br><br>"Toy cars; remote control toys, namely, cars; cornhole game sets; cornhole game boards; cornhole bags; surf boards; skate boards; snowboards; golf bags" in International Class 28 (first use in commerce date:  December 8, 2011); | | |

10.     Attached hereto as Exhibits 1-14 are true and correct copies of Monster's trademark registrations identified in Paragraph 9 above; they are hereby incorporated by reference.  The trademarks that are the subject of the above registrations and all common law rights therein are referred to herein as the "MONSTER Marks."

11.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,315, 4,036,680, 4,036,681, 3,057,061, 3,044,314, 3,134,842,3,134,841, 3,908,601, 3,908,600, 3,914,828, and 4,332,062 are incontestable.

12.     Monster is also the owner of California Trademark Registration No. 108,124 for the mark MONSTER for "fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, aerated water, soda water and seltzer water" in International Class 32.  Ex. 15.  That registration issued on April 24, 2002. *Id.*  The registration was last renewed on April 24, 2017, and remains in effect.  *Id.*

13.     As a result of Monster's substantial and continuous use of its MONSTER Marks, Monster is also the owner of strong common-law rights in those marks.

14.    The MONSTER family of products has achieved substantial commercial success. The MONSTER brand has established itself as the best-selling energy drink brand in the United States.  MONSTER-branded drinks are sold in over 370,000 retail outlets in the United States, including convenience stores, gas stations, and grocery stores.

15.    Since 2002, Monster has sold more than 37.2 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER line of drinks have generated over $64 billion in estimated total retail revenues internationally.  In 2020, Monster sold nearly 5 billion cans worldwide.

16.    The MONSTER Marks are the subject of substantial and continuous marketing and promotion by Monster in connection with its MONSTER line of drinks.  Since 2002, Monster has spent in excess of $8.5 billion dollars promoting and marketing its MONSTER brand.  In 2019 alone, Monster spent over $1 billion in advertising, marketing, and promoting its MONSTER brand.

17.     Monster's promotional efforts also include using and displaying the MONSTER Marks on, in, or in connection with widespread distribution of promotional and point-of-sale materials; product samplings; apparel and merchandise; trucks and other vehicles; magazines and other industry publications; Monster's website, social media sites, and other Internet websites; attendance at trade shows; and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.  Since 2002, Monster has distributed millions of point-of-sale marketing items bearing its MONSTER Marks.  These point-of-sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.

18.    Monster also widely markets and promotes the MONSTER Marks to consumers through clothing sales and giveaways.  Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its MONSTER Marks.

19.    Further, Monster allocates a large proportion of its marketing, advertising, and promotional budget to athlete endorsements and sponsoring athletic competitions and events. Monster's marketing and promotional activities include, but are not limited to, sponsorship of

professional fighting, including the Ultimate Fighting Championship ("UFC"); basketball; baseball; hockey; NASCAR; Road Racing World Championship Grand Prix ("MotoGP") events; the AMA Supercross Series (as the title sponsor for all 16 series races); and the X Games.  At Monster-sponsored events, the MONSTER Marks are prominently promoted at the venues, including on banners and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

20.    In addition, Monster sponsors hundreds of athletes or athletic teams that compete in a wide-variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, and various classes of NASCAR racing.  When Monster sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will display the Monster brand.  Many of the events that the Monster-sponsored athletes and athletic teams compete in are broadcast nationally on television, and the broadcasts display the MONSTER Marks.

21.    The MONSTER Marks also receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.  As of July 2021, Monster's Facebook page has over 25 million "likes"; Monster's YouTube page has over 496 million views; Monster's Twitter page has approximately 3 million followers; and Monster's Instagram page has approximately 7.6 million followers.  The MONSTER Marks are displayed on these websites and social media sites.

22.    The MONSTER Marks have also received significant exposure in national publications.  For example, they have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes*, and *Business Week*, among other publications.

23.    The MONSTER brand was also marketed and promoted while prominently displayed on the Las Vegas monorail (the "Monster Train").  In 2003, Monster engaged in a massive advertising campaign in connection with its sponsorship of the Monster Train, which prominently featured the MONSTER ENERGY® mark.  The Monster Train was featured in *The*

1 *Wall Street Journal*, *Time*, and *USA Today* in 2003, and these articles were read by an estimated

2 32 million people in the U.S.   Television and internet reports that discussed the Las Vegas

3 Monster Train reached another 70 million readers, and television and radio promotions were

4 circulated to approximately 36 million people in the U.S.

5    24.    As a result of Monster's substantial use and promotion of its MONSTER Marks

6 in connection with its MONSTER family of products, the MONSTER Marks have become

7 famous and have acquired great value as specific identifiers of Monster's products that serve to

8 identify and distinguish Monster's products from those of others.   Monster has obtained strong

9 common law rights in the MONSTER Marks, which are not only inherently distinctive but have

10 also acquired secondary meaning.   Customers in this judicial district and elsewhere readily

11 recognize Monster's MONSTER Marks as distinctive designations of the origin of Monster's

12 drinks, beverage ware, hats, clothing, bags, sporting equipment, accessories, promotional items,

13 and other products.   The MONSTER Marks are intellectual property assets of enormous value as

14 symbols of Monster and its quality, reputation and goodwill.

15 **B.    OPS's Infringing Activities**

16    25.    OPS is engaged in providing retail store services related to outdoor sports

17 activities in the United States, including by operating one or more retail stores in this judicial

18 district.   One such retail store is located at 412 Houser St., Cotati California 94931.

19    26.    The websites www.outdoorproshop.com and www.monsterfishingtackle.com, as

20 well as the Facebook account https://m.facebook.com/MonsterFishingTackle and the Instagram

21 page https://www.instagram.com/monster_fishing_tackle/?hl=en, are all operated by OPS.   OPS

22 uses these online outlets to market and sell goods and services nationwide, including in this

23 judicial district.

24    27.    On information and belief, OPS has sold and/or is offering for sale the goods and

25 services discussed in Paragraphs 28-41 in the Counterclaims (hereinafter, the "Infringing Goods

26 & Services") in connection with at least the marks MONSTER, **MONSTER** ,

27 MONSTERFISHINGTACKLE.COM, **MONSTER** , **MONSTER** , and/or MONSTER

28 FISHING TACKLE (collectively, "the Infringing Marks") to customers in this judicial district.

DEFENDANT'S ANSWER & COUNTERCLAIMS          Case No.: 5:20-CV-05999-BLF

28.   <u>Clothing and Hats</u>.  OPS alleges that it sells and/or has sold clothing and hats under one or more of the Infringing Marks.  Dkt. 25 at p. 3-4; Exs. 16 and 17; Dkt 1. at ¶ 7.  For example, in its Trademark Appl. Nos. 90/325,371; 90/360,319; 90/448,706; and 88/568,305 for Infringing Marks for use with apparel, hats, shirts and/or retail store services related to clothing, OPS has alleged that it used in commerce the Infringing Marks that are the subject of these four applications, and that it first did so in May 2008, October 2008, August 2020, October 2008, respectively.  Dkt. 25 (Amended Complaint) at 3-4.

29.   As reflected in Trademark Reg. Nos. 3,908,601 and 5,820,689, Monster owns the exclusive right to use its MONSTER Marks in connection with clothing (such as t-shirts, hooded shirts, hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves), headgear (such as hats and beanies), and related goods.  Monster has used its MONSTER Marks in commerce (on the goods listed above) since 2002, long before OPS used its Infringing Marks on clothing, hats or related goods.  OPS's marketing and sale of clothing and hats under its Infringing Marks create a likelihood of confusion with Monster's MONSTER Marks.  Indeed, OPS admits that the parties' sales of their respective products creates a likelihood of confusion. Dkt .1 at ¶¶ 11, and 17-18; Dkt. 25 at ¶¶ 11, and 16-18.

30.   <u>Beverage Ware</u>.  OPS alleges that it sells and/or has sold beverage ware under one or more of the Infringing Marks.  Dkt. 3; Ex. 18; Dkt 1. at ¶ 7.  For example, in its Trademark Appl. No. 90/325,312 for an Infringing Mark for use with retail store services related to mugs, OPS has alleged that it used in commerce the Infringing Mark that is the subject of this application, and that it first did so in April 2008.  Dkt. 25 at 3.

31.   As reflected in Trademark Reg. Nos. 3,044,315, 4,036,680, 4,036,681, 3,057,061, 3,044,314, 3,134,842, 3,134,841, and 5,820,689, Monster owns the exclusive right to use its MONSTER Marks in connection with beverages, beverage ware (such as insulated beverage containers for domestic use, bottles sold empty, drinking bottles for sports, water bottles sold empty and bottle openers), and related goods.  Monster has used its MONSTER Marks in commerce (on the goods listed above) since at least as early as 2002 for beverages and at least as early as January 2005 for beverage ware, long before OPS used its Infringing Marks on beverage

1    ware.  OPS's marketing and sale of beverage ware under its Infringing Marks create a likelihood

2    of confusion with Monster's MONSTER Marks.  Indeed, OPS acknowledges a likelihood of

3    confusion in its pleadings. Dkt. 1 at ¶¶ 11, and 17-18.

4          32.    <u>Sporting Equipment</u>.  OPS alleges that it sells and/or has sold sporting goods

5    under one or more of the Infringing Marks.  Dkt. 25 at p. 3-4; Dkt 1. at ¶ 7.  For example, in its

6    Trademark Appl. No. 88/568,305 for an Infringing Mark for use with camping equipment, OPS

7    has alleged that it used in commerce the Infringing Marks that are the subject of this application,

8    and that it first did so in October 1, 2008. Dkt. 25 (Amended Complaint) at 3-4.

9          33.    As reflected in Trademark Reg. Nos. 3,914,828 and 5,820,689, Monster owns the

10   exclusive right to use its MONSTER Marks in connection with sporting goods such as sports

11   helmets and tents.  Monster has used its MONSTER Marks in commerce (on the goods listed

12   above) since at least as early as December 2006, long before OPS used its Infringing Marks on

13   sporting goods.  OPS's marketing and sale of sporting goods under its Infringing Marks create a

14   likelihood of confusion with Monster's MONSTER Marks.

15         34.    <u>Bags</u>.  OPS alleges that it sells and/or has sold bags under one or more of the

16   Infringing Marks.  Dkt. 25 at p. 3-4; Ex. 15.  Upon information and belief, OPS began selling

17   bags in approximately 2021. *See id.*

18         35.    As reflected in Trademark Reg. No. 3,923,683, Monster owns the exclusive right

19   to use its MONSTER Marks in connection with bags – such as sport bags, carrying bags,

20   backpacks, and duffle bags – and related goods.  Monster has used its MONSTER Marks in

21   commerce (on the goods listed above) since at least as early as May 2004, long before OPS used

22   its Infringing Marks on bags.  OPS's marketing and sale of bags under its Infringing Marks

23   create a likelihood of confusion with Monster's MONSTER Marks.

24         36.    <u>Stickers</u>.  OPS alleges that it sells and/or has sold stickers under one or more of

25   the Infringing Marks.  Dkt. 25 at p. 3-4; Ex. 19.  Based on publically available online

26   information, OPS began selling stickers in approximately 2016. *See id.*

27         37.    As reflected in Trademark Reg. No. 3,908,600, Monster owns the exclusive right

28   to use its MONSTER Marks in connection with stickers, sticker kits, and decals.  Monster has

1   used its MONSTER Marks in commerce (on the goods listed above) since at least as early as

2   January 2004, long before OPS used its Infringing Marks on stickers.  OPS's marketing and sale

3   of stickers under its Infringing Marks create a likelihood of confusion with Monster's

4   MONSTER Marks.

5          38.     Gift Novelties.  OPS alleges that it sells and/or has sold gift novelties under one or

6   more of the Infringing Marks.   Dkt. 25 at p. 3-4; Dkt 1. at ¶ 7.   For example, OPS filed

7   Trademark Appl. No. 88/568,305 for Infringing Marks for use with gift novelties.  OPS has

8   alleged that it used in commerce the Infringing Marks that are the subject of these applications,

9   and that it first did so in October 2008.  Dkt. 25 (Amended Complaint) at 3-4.

10         39.     As reflected in Trademark Reg. Nos. 4,660,598, 3,908,600, 5,820,689, and

11  4,332,062, Monster owns the exclusive right to use its MONSTER Marks in connection with gift

12  novelties such as lanyards (first used in commerce at least as early as December 2006), stickers

13  (first used in commerce at least as early as January 2004), towels and blankets (first used in

14  commerce  at least as early as July 2003), wrist bands (first used in commerce at least as early as

15  December 2006), and related goods.  For each of these sub-categories of goods, Monster has

16  used its MONSTER Marks in commerce with those goods since at least as early as the dates

17  indicated above, and long before OPS used its Infringing Marks on gift novelties.   OPS's

18  marketing and sale of gift novelties under its Infringing Marks create a likelihood of confusion

19  with Monster's MONSTER Marks.

20         40.     Retail Store Services in Connection with Products for Outdoor Activities.  In its

21  trademark applications, OPS alleges that it offers retail store services featuring products for

22  outdoor activities such as fishing and camping under one or more of the Infringing Marks.  *See*

23  Trademark Appl. Nos. 88/568,305 and 88/448,889.  OPS has alleged that it used in commerce

24  the Infringing Marks that are the subject of these two applications, and that it first did so in

25  October 2008 and December 2008, respectively.  OPS uses one or more of the Infringing Marks

26  on its outdoorproshop.com website and in the URL of its site www.monsterfishingtackle.com.

27  On information and belief, OPS also uses one or more of the Infringing Marks in connection

28  with its retail shops in California.

41.     As reflected in Trademark Reg. No. 5,820,689, Monster owns the exclusive right to use its MONSTER Marks in connection with outdoor equipment and activities such as blankets for outdoor use and tents.  Monster has used its MONSTER Marks in commerce (on the goods listed above) since at least as early as July 2003 and December 2006, respectively, long before OPS used its Infringing Marks on retail store services in connection with products for outdoor equipment and activities.  OPS's provision of retail store services under its Infringing Marks creates a likelihood of confusion with Monster's MONSTER Marks.

42.     For each category of goods and services discussed in Paragraphs 27-41, Monster has used its MONSTER Marks on these goods continuously and without material interruption from its first use in commerce until the present day.

43.     Below are examples of Monster's use of its MONSTER Marks on the products discussed in Paragraphs 27-38.

    

   

1
2
3
4
5
6
7
8




9
10
11
12
13
14
15
16





17
18
19
20
21
22




23    44.    OPS is not affiliated with Monster.  Without Monster's permission or consent,

24  OPS has infringed Monster's trademark rights by making, using, promoting, advertising, selling,

25  and/or offering to sell Infringing Goods and Services under OPS's Infringing Marks.

26    45.    OPS's actions have created a likelihood of confusion, mistake or deception as to

27  the source of OPS's products and are intended to cause consumers and potential customers to

28  believe that OPS's products are associated with Monster, when they are not.

46. OPS had a duty to avoid confusion with Monster and its marks because OPS adopted its Infringing Marks after Monster's extensive use and advertising of its MONSTER marks had made them famous. Nevertheless, OPS deliberately adopted similar marks for similar goods and services in a manner that was and is likely to cause confusion with Monster's MONSTER Marks.

47. By virtue of the acts complained of herein, OPS has injured Monster's business reputation and goodwill; created a likelihood of consumer confusion, mistake and deception as to the source, origin or relationship of OPS's goods and services; and has otherwise competed unfairly with Monster by unlawfully trading on Monster's reputation and using Monster's marks without Monster's permission or consent.

48. OPS's unlawful acts have caused damage to Monster in an amount to be determined at trial. Such damages will continue to increase unless OPS is enjoined from further wrongful acts and infringement.

49. OPS's unlawful actions have caused Monster to suffer irreparable injury to its business for which there is no adequate legal remedy. Monster will continue to suffer loss of goodwill, reputational injury and lost sales unless and until OPS is enjoined from the wrongful acts complained of herein.

## FIRST COUNTERCLAIM
### (Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))

50. Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-49 of these counterclaims as if fully set forth herein.

51. This is a claim for trademark infringement and false designation of origin under 15 U.S.C. § 1125(a).

52. Monster's MONSTER Marks are arbitrary terms and are therefore inherently distinctive. Moreover, as a result of the widespread use and promotion of the MONSTER Marks, those marks have acquired secondary meaning in that consumers have come to associate them with Monster as the source of the goods branded with the marks.

53.     OPS has infringed the MONSTER Marks and created a false designation of origin by using in commerce, without Monster's permission or consent, the confusingly similar Infringing Marks in connection with the advertisement, offering for sale, and sale of at least the Infringing Goods and Services.

54.     OPS's actions are likely to cause confusion and mistake, or to deceive consumers as to the affiliation, connection, or association of Monster or its MONSTER Marks with OPS, and/or as to the origin, sponsorship, or approval of OPS's goods and services or OPS's commercial activities, in violation of 15 U.S.C. § 1125(a).

55.     OPS acted with the intent to trade upon Monster's reputation and goodwill in its MONSTER Marks by causing confusion and mistake among consumers, and to deceive the public into believing that OPS's goods and services are associated with, sponsored by, or approved by Monster, when they are not.

56.     OPS had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and willfully violated 15 U.S.C. § 1125(a).

57.     OPS, by its actions, has damaged Monster in an amount to be determined at trial.

58.     OPS, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless OPS is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## SECOND COUNTERCLAIM
### (Trademark Infringement Under 15 U.S.C. § 1114)

59.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-58 of these counterclaims as if fully set forth herein.

60.     This is a claim for trademark infringement under 15 U.S.C. § 1114.

61.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks.

62.     OPS has used in commerce, without permission from Monster, marks that are colorable imitations of and/or confusingly similar to the MONSTER Marks, in connection with

1   the advertising, marketing, and/or promoting of at least the Infringing Goods and Services.  Such
2   use is likely to cause confusion or mistake, or to deceive.

3        63.     The activities of OPS complained of herein constitute willful and intentional
4   infringement of Monster's registered marks.  OPS's infringement was done with the intent to
5   trade upon Monster's reputation and goodwill by causing confusion and mistake among
6   consumers, and to deceive the public into believing that OPS's goods and services are associated
7   with, sponsored by, originated from, or are approved by, Monster, when they are not.

8        64.     OPS had actual knowledge of Monster's ownership and prior use of the
9   MONSTER Marks and has willfully violated 15 U.S.C. § 1114.

10       65.     OPS, by its actions, has damaged Monster in an amount to be determined at trial.

11       66.     OPS, by its actions, has irreparably injured Monster.  Such irreparable injury will
12  continue unless OPS is enjoined by this Court from further violation of Monster's rights, for
13  which Monster has no adequate remedy at law.

14                           **THIRD COUNTERCLAIM**
15                    **(California Common Law Unfair Competition)**

16       67.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-66
17  of these counterclaims as though fully set forth herein.

18       68.     This is a claim for unfair competition under California common law.

19       69.     OPS's acts complained of herein constitute trademark infringement and unfair
20  competition under California common law.

21       70.     By virtue of the acts complained of herein, OPS has willfully and intentionally
22  caused a likelihood of confusion among the purchasing public in this judicial district and
23  elsewhere, thereby unfairly competing with Monster in violation of the common law of the state
24  of California.

25       71.     OPS, by its actions, has damaged Monster in an amount to be determined at trial.

26       72.     OPS, by its actions, has irreparably injured Monster.  Such irreparable injury will
27  continue unless OPS is enjoined by this Court from further violation of Monster's rights, for
28  which Monster has no adequate remedy at law.

DEFENDANT'S ANSWER & COUNTERCLAIMS          Case No.: 5:20-CV-05999-BLF

73.     OPS's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

## FOURTH COUNTERCLAIM

### (Trademark Infringement Under Cal. Business & Professions Code § 14245)

74.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-73 of these counterclaims as though fully set forth herein.

75.     This is a claim for trademark infringement under California Business and Professions Code § 14245.

76.     OPS has used in commerce, in connection with the advertising, marketing, and/or promoting of at least the Infringing Goods and Services, marks that are colorable imitations of and/or confusingly similar to Monster's MONSTER trademark, which is the subject of California Trademark Registration No. 108,124.  Such use is without permission from Monster and is likely to cause confusion or mistake, or to deceive.

77.     The activities of OPS complained of herein constitute willful and intentional infringement of Monster's registered California trademark.  OPS's infringement was done with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among consumers, and to deceive the public into believing that OPS's goods and services are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

78.     Upon information and belief, OPS had actual knowledge of Monster's ownership and prior use of the MONSTER trademark and has willfully violated California Business and Professions Code § 14245.

79.     OPS, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless OPS is enjoined by this Court from further violation of Monster's state trademark rights, for which Monster has no adequate remedy at law.

80.     OPS's infringing acts were performed with willfulness, wantonness, malice, and conscious indifference to the rights and welfare of Monster, the trademark registrant, and therefore Monster is entitled to exemplary damages under California law.

DEFENDANT'S ANSWER & COUNTERCLAIMS          Case No.: 5:20-CV-05999-BLF

**FIFTH COUNTERCLAIM**

**(Unfair Competition Under Cal. Business & Professions Code §§17200 *et seq.*)**

81.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-80 of these counterclaims as though fully set forth herein.

82.     This is a claim for unfair competition under California Business and Professions Code § 17200, *et seq.*

83.     Through the acts complained of herein, OPS has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

84.     OPS's actions constitute trademark infringement; unfair competition; and unfair, malicious or fraudulent business practices that have injured and damaged Monster.

85.     OPS, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless OPS is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

**PRAYER FOR JUDGMENT**

WHEREFORE, Monster denies that OPS is entitled to any of the relief requested in its Amended Complaint, and it prays for a judgment in its favor granting the following relief:

A.     That OPS's claims against Monster be dismissed with prejudice and that all relief requested by OPS be denied, including monetary and injunctive relief;

B.     That OPS take nothing by its Amended Complaint against Monster;

C.     That OPS be finally adjudicated to have violated the provisions of 15 U.S.C. § 1125(a) by infringing the MONSTER Marks and falsely designating the origin of its goods and services, including at least the Infringing Goods and Services;

D.     That OPS be finally adjudicated to have violated the provisions of 15 U.S.C. § 1114 by infringing the MONSTER Marks;

E.     That OPS be finally adjudicated to have violated California common law by unfairly competing with Monster;

F.      That OPS be finally adjudicated to have violated the provisions of California Business & Professions Code §§ 17200, *et seq.* by committing trademark infringement and unfairly competing with Monster;

G.      That OPS be finally adjudicated to have violated the provisions of California Business & Professions Code § 14245;

H.      That OPS, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with OPS who receive actual notice of the injunction by personal service or otherwise, be permanently enjoined from:

a.      using any Infringing Mark, or any confusingly similar variation thereof, in connection with the advertising, promotion or sale of Infringing Goods or Services;

b.      using the term "Monster" in connection with the advertising, promotion or sale of Infringing Goods or Services;

c.      selling, offering to sell, distributing, shipping, importing, transferring, reproducing, displaying, advertising, marketing or promoting any unauthorized product bearing a MONSTER Mark or any merely colorable variation thereof;

d.      filing or pursuing an application to register an Infringing Mark for use with one or more Infringing Goods or Services; and

e.      otherwise infringing any of the MONSTER Marks;

I.      That OPS be directed to file with this Court and serve on Monster within thirty (30) days of the Court's injunction, a written report, under oath, setting forth in detail the manner and form in which OPS has complied with the injunction pursuant to 15 U.S.C. § 1116;

J.      That OPS be required to account to Monster for all profits derived by OPS from its unlawful conduct;

K.      That OPS be ordered to pay over to Monster all damages that Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

L.     That this case be deemed exceptional and damages increased pursuant to 15 U.S.C. § 1117;

M.     That Monster be awarded exemplary damages from OPS pursuant to Cal. Civ. Code. § 3294;

N.     That Monster be awarded its reasonable costs, expenses and attorneys' fees pursuant to at least 15 U.S.C. § 1117;

O.     That OPS be required to deliver and destroy all Infringing Goods, as well as all advertising, packaging and other related materials, which bear the word "Monster" or any of the Infringing Marks, pursuant to 15 U.S.C. § 1118; and

P.     That Monster be awarded such other and further relief as this Court may deem just.


                          Respectfully submitted,

                          KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:__July 20, 2021_____     By:_/s / Sean M. Murray_____
                             Steven J. Nataupsky
                             Lynda J. Zadra-Symes
                             Sean M. Murray
                             Alexander D. Zeng

                             *Attorneys for Defendant-Counterclaimant*
                             *Monster Energy Company*

1

## DEMAND FOR JURY TRIAL

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Monster demands a trial

3   by jury of all issues raised by the pleadings which are triable by jury.

4

5                                          Respectfully submitted,

6                                          KNOBBE, MARTENS, OLSON & BEAR, LLP

7   Dated:_ July 20, 2021_____      By:*/s / Sean M. Murray*_____
                                           Steven J. Nataupsky
8                                          Lynda J. Zadra-Symes
                                           Sean M. Murray
9                                          Alexander D. Zeng

10                                         *Attorneys for Defendant-Counterclaimant*
                                           *Monster Energy Company*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28