Steven J. Nataupsky (155,913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (156,511)
lynda.zadra-symes@knobbe.com
Sean M. Murray (213,655)
sean.murray@knobbe.com
Matthew S. Bellinger (222,228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Alexander Zeng (317,234)
alexander.Zeng@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Attorneys for Defendant
MONSTER ENERGY COMPANY

Kenneth C. Brooks (SBN 167,792)
kcb@brookspatents.com
LAW OFFICES OF KENNETH C. BROOKS
5329 Thunder Ridge Circle
Rocklin, California 95765
Phone: (408) 368-7997
Facsimile: (877) 730-4315

Attorneys for Plaintiff
OUTDOOR PRO SHOP, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| OUTDOOR PRO SHOP, INC., <br><br> Plaintiff, <br><br> v. <br><br> MONSTER ENERGY COMPANY, <br><br> Defendant. <br><br> AND ALL COUNTERCLAIMS | No. 5:20-CV-05999-BLF <br><br> Hon. Beth Labson Freeman <br> Hon. Susan van Keulen <br><br> **JOINT STATEMENT REGARDING DISCOVERY DISPUTES** |

Pursuant to Judge van Keulen's Civil and Discovery Referral Matters Standing Order, the parties submit this joint statement regarding discovery disputes raised by Monster. The parties conferred but were unable to resolve the following discovery issues. Forty-four (44) days remain before the close of fact discovery on April 1, 2022, and 327 days remain before the first day of trial on January 9, 2023. Exhibit A is the chart required by the standing order.

**A.  Documents regarding advertising or promotion of OPS's Monster marks (RFP Nos. 14, 36)**

Monster's Position: OPS stated it "appeared a [sic] various fishing tournaments/competition, fishing retail shows to discuss and provide handouts using the OPS marks…." Ex. M at 10. OPS also listed twenty-three publications in which it advertised. *Id.* at 7-8. However, OPS has produced only a few ads, and none contain the word "Monster." OPS has produced almost no correspondence with event organizers, publications or others with whom OPS promoted its marks. Monster has not proposed a compromise for this dispute.

OPS's Position: OPS has objected to these requests as overbroad to the extent that they pertain to documents unrelated to the OPS marks. With respect to documents related to OPS marks, OPS has produced all documents in its custody or control of which it is aware that are responsive to this request. OPS has also produced a list of publications in which it advertised so that Monster may subpoena documents from these third parties if desired. Should OPS become aware of any additional documents responsive to these requests it will produce them to Monster.

**B.  Internal OPS documents referring to a Monster mark or product (RFP No. 18)**

Monster's Position: OPS has produced no internal emails mentioning its Monster marks or products. Nor has OPS produced files for its Monster marks or products. Monster's proposed compromise is set forth in Exhibit A.

OPS's Position: OPS has produced all non-privileged internal documents in its custody or control of which it is aware that are responsive to this request. Should MPS become aware of any additional documents, it will produce them to Monster or update its privilege log in the case of privileged documents.

### C. Correspondence with customers relating to a Monster-branded product (RFP No. 18)

Monster's Position: OPS has produced no customer correspondence at all. Monster has not proposed a compromise for this dispute.

OPS's Position: OPS is not aware of any customer correspondence in its custody or control relating to the OPS marks. Should OPS become aware of any, it will produce them to Monster.

### D. Documents relating to OPS's adoption of its marks (RFP Nos. 19, 21)

Monster's Position: OPS has produced no internal correspondence discussing its choice to adopt "Monster Fishing Tackle," or any other internal documents relating to the selection process. OPS produced no correspondence or other documents exchanged with its logo designer. Monster has not proposed a compromise here.

OPS's Position: OPS is not aware of any internal documents in its custody or control responsive to these requests. OPS objects to the request for documents exchanged with its "logo designer" because there is no logo at issue in this case. Furthermore, in its response to Monster's Interrogatory No. 3, OPS explained the process by which the name "Monster Fishing Tackle" was selected.

### E. OPS's evidence of its first use in commerce (Rog. No. 1)

Monster's Position: Interrogatory No. 1 asks for a description of OPS's evidence of its first use in commerce of its Monster marks in each disputed product category (e.g., apparel), including evidence of how OPS used "Monster" in each product category (e.g., images of the product), as well as OPS's evidence that the use was in commerce (e.g., sales records). Ex. B at 3. OPS's recent communications

to Monster suggest that OPS intends to rely on first-use evidence not included in its interrogatory response.  Monster requested that OPS update its interrogatory response or confirm that the response identifies all of OPS's first-use evidence.  OPS has done neither.  Monster proposes a compromise in Exhibit A.

OPS's Position: OPS has responded to this interrogatory by producing documents (Bates nos. P000001-P000114) that show the first use on commerce of its Monster marks on various products. The document labelled no. P000114 is a spreadsheet created by OPS summarizing from voluminous sales data the first use in commerce of the various products. As a compromise, should Monster desire more detailed evidence, OPS will give Monster access to this voluminous sales data so that Monster may extract evidence at whatever level of detail it desires. Furthermore, to the extent that Monster requests that OPS confirm that the response identifies all of OPS's first-use evidence, OPS objects to this interrogatory as a contention interrogatory that is premature at this phase of discovery. See Zulewski v. Hershey Co., No. CV 11-05117, at *2 (N.D. Cal. 2012).

**F.  OPS's expenditures on advertisements and promotion (Rog. No. 6)**

Monster's Position:  OPS has alleged that it has engaged in "vast advertising" and has promoted its Monster marks and products at fishing events.  Ex. M at 10. But it has not stated how much it has spent on advertising or promotion on an annual basis.  Monster has not proposed a compromise for this dispute.

OPS's Position: OPS has responded to this interrogatory by producing documents (Bates nos. P000221-000268).

**G.  Financial information related to OPS's sale of products under its Monster marks (Rog. No. 8; RFP Nos. 54-57)**

Monster's Position: Monster has requested revenue, cost and profit data for OPS's Monster products.  OPS stated that it does not know how to export this data from its enterprise software.  However, OPS affirmatively relies on its sales and must produce its financial information.  Monster has not proposed a compromise here.

<u>OPS's Position</u>: OPS has responding to this interrogatory by producing documents (Bates nos. P000221-P000268) that contain the information that Monster requested. To the extent Monster requests more detailed sales information that OPS is unable to extract from its point-of-sale system, OPS is willing to provide Monster access to its system so that it may extract the information it seeks.

**H.   Alleged instances of actual confusion (ROG Nos. 10, 12; RFP No. 74)**

<u>Monster's Position</u>:  Interrogatory No. 12 asked OPS to describe any instances of actual confusion.  OPS provided no narrative response and has refused to either supplement its response to describe any instances of actual confusion or confirm that it is aware of none.  Monster has not proposed a compromise for this dispute.

<u>OPS's Position</u>: OPS has responded to this interrogatory by producing documents (Bates nos. P000115-P000220) that contain the information sought.

**I.   The facts and evidence supporting OPS's claim that its marks have gained secondary meaning (Rog. No. 13)**

<u>Monster's Position</u>: OPS's response states that it developed secondary meaning through advertising, but OPS did not identify the specific publications in which it advertised a Monster product, the dates of the ads, or their cost.  Nor did OPS identify any specific fishing event or describe how it promoted its marks at each event and the costs incurred.  Monster has not proposed a compromise here.

<u>OPS's Position</u>: OPS responded to this interrogatory by explaining that the principal of OPS, Mr. Kenneth S. Elie, and several of his employees have appeared at various fishing events over the years. OPS also referred Monster to its response to Interrogatory No. 7 in which it lists a number of publications in which it has advertised using the OPS marks.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 |   | KNOBBE, MARTENS, OLSON & BEAR, LLP |

Dated: February 16, 2022    By: */s/ Sean M. Murray*
　　　　　　　　　　　　　　Steven J. Nataupsky
　　　　　　　　　　　　　　Lynda J. Zadra-Symes
　　　　　　　　　　　　　　Sean M. Murray
　　　　　　　　　　　　　　Matthew S. Bellinger
　　　　　　　　　　　　　　Alexander D. Zeng

Attorneys for Defendant
MONSTER ENERGY COMPANY


THE LAW OFFICES OF KENNETH C. BROOKS

Dated: February 16, 2022    By: */s/ Kenneth C. Brooks*
　　　　　　　　　　　　　　Kenneth C. Brooks

Attorney for Plaintiff
OUTDOOR PRO SHOP, INC.


**ATTESTATION OF E-FILED SIGNATURE**

I, Sean M. Murray, attest that all signatories listed above have read and approved this stipulation and consent to the filing of same in this action.


Dated: February 16, 2022    By: */s/ Sean M. Murray*
　　　　　　　　　　　　　　Sean M. Murray