**EXHIBIT A**

Pursuant to Section 8 of Judge van Keulen's Civil and Discovery Referral Matters Standing Order, the parties submit this chart in support of the Joint Statement Regarding Discovery Disputes. At issue are OPS's responses to Monster's Request for Production ("RFPS") Nos. 14, 18, 19, 21, 36, 54-57, and 74 and Monster's Interrogatory ("ROG") Nos. 1, 6, 8, 10, 12, and 13.

### A.   DOCUMENTS REGARDING ADVERTISING AND PROMOTION OF OPS'S MONSTER MARKS (RFP NOS. 14, 36)

**RFP No. 14:**

All advertisements, catalogs, brochures, mailers, marketing emails, videos, fliers and other marketing materials that OPS purchased or disseminated since 2000.

**OPS's Response to RFP No. 14:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request. OUTDOOR PRO SHOP, INC. also objects to this request as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY for the phrase "use in commerce". OUTDOOR PRO SHOP, INC. also objects to this request as being overly broad and burdensome as it will require to reach out to third parties over which it has no control to acquire documents that are over twenty years old as many of the relevant documents are no longer in the possession custody or control of OUTDOOR PRO SHOP, INC. A list of third parties that may have records of the categories of documents that are sought are located at the following newspapers: Sonoma County Press Democrat; San Francisco Chronicle; Oakland Tribune; Rohnert Park Community Voice; Sonoma Index Tribune; Napa Valley Register; Healdsburg Tribune; Ukiah Daily Journal; The Fish Sniffer; Western Outdoor News; California Sportsman; Salmon Trout Steelhead; Steelhead Journal; The East Bay News; Mercury Times; Marin Independent Journal; The Argus Courier; Alameda Times Star; Tri Valley Herald; Vallejo Times Herald; Fish Taco Chronicles; The Sacramento Bee; Point Reyes Light. OUTDOOR PRO SHOP, INC. also objects to this request as overly broad in that it is not narrowed to seeking information about OUTDOOR PRO SHOP, INC.'s use of OPS marks and rather appears to be an unduly oppressive vacuum of all documents related to OUTDOOR PRO SHOP, INC.'s business activity in the last 21 years most of which contains information that is neither relevant to the claims in this action nor reasonably calculated to lead to the discovery of admissible evidence. The request, on its face, does not distinguishd between materials acquired from third parties for purposes of marketing third party goods in marketing in a retail brick and mortar retail establishment from those materials purchased containing OPS marks. Finally, it is impossible for OUTDOOR PRO SHOP, INC. to know the extent of the documents within this category, because records of the same are not sufficiently maintained so as to know what marketing materials were purchased given the broad scope of the request. OUTDOOR PRO SHOP, INC. also objects to this request as many of the documents within this category of documents is equally available to MONSTER ENERGY COMPANY through publically available sources, such as the wayback machine, which is located at http://www.waybackmachine.com. Without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, including advertisements, redacted

invoices/receipts, images of goods showing use of the OPS marks in its possession, custody or control, if any, which are responsive to this request.

## RFP No. 36:

All catalogs, print advertisements and television/radio spots that OPS has distributed or placed since 2000, whether or not they relate to the OPS Marks, and all banners, website ads, social media ads/posts or other promotional items that You have used to promote the OPS Marks since 2000.

## OPS's Response to RFP No. 37 [*sic*]:

OUTDOOR PRO SHOP, INC. objects to this request as seeking documents contain information not likely to lead to the discovery of admissible evidence at trial and are irrelevant therefore, such as documents concerning no OPS Marks and documents concerning the categories of documents identified that occurred before 2007, said documents will not be produced. OUTDOOR PRO SHOP, INC. objects to this request as being duplicative as many of the documents that satisfy this request have already been provided to Requesting Party in response to its request for production numbers 1-14. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. Without waiving the foregoing objections, OUTDOOR PRO SHOP, INC. will produce documents within its possession, custody or control.

## OPS's Supplemental Response to RFP No. 36:

OUTDOOR PRO SHOP, INC. objects to this request as seeking documents contain information not likely to lead to the discovery of admissible evidence at trial and are irrelevant therefore, such as documents concerning no OPS Marks and documents concerning the categories of documents identified that occurred before 2007, said documents will not be produced. OUTDOOR PRO SHOP, INC. objects to this request as being duplicative as many of the documents that satisfy this request have already been provided to Requesting Party in response to its request for production numbers 1-14. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. Without waiving the foregoing objections, OUTDOOR PRO SHOP, INC. will produce documents within its possession, custody or control that satisfy this request, with the understanding that a diligent search and reasonable inquiry to locate the certain documents and is unable to comply because said certain the documents were lost or destroyed some year back.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS does not propose a compromise for this dispute. | |

### B.    INTERNAL OPS DOCUMENTS REFERRING TO A MONSTER MARK OR A PRODUCT MARKETED UNDER A MONSTER MARK (RFP NO. 18)

**RFP No. 18:**

All documents that mention or refer to an OPS Mark, including documents that mention product names that include an OPS Mark (e.g., "MonsterFishingTackle.com Die-Cut Vinyl Sticker 9"x 3" – White").

**OPS's Response to RFP No. 18:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because they were of a limited run and early on in the existence of OUTDOOR PRO SHOP, INC. fliers and stickers and other promotional materials were delivered by hand and much of the record concerning the same are no longer in existence. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require several days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things within the possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents. Additionally, OUTDOOR PRO SHOP, INC. will produce a compilation set forth in an Excel spreadsheet including 163,151 entries showing products sold on the website. of OUTDOOR PRO SHOP, INC. once a confidentiality agreement is set forth as disclosure of this material is objected to as contained highly confidential and proprietary business information of OUTDOOR PRO SHOP, INC.

**OPS's Supplemental Response to RFP No. 18:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the

instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because they were of a limited run and early on in the existence of OUTDOOR PRO SHOP, INC. fliers and stickers and other promotional materials were delivered by hand and much of the record concerning the same are no longer in existence. In addition, upon a reasonable and diligent search there are some communications that would satisfy the request that are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. because the same never existed with respect to communications with vendors and inter-office communications as much of the interactions between vendors and inter-office personnel was don over the telephone or by word of mouth, i.e., face-to-face communication aka known as the sneaker-net. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require several days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor. With respect to documents and things within the possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster proposes, as a compromise, that OPS produce (1) internal correspondence and memos that mention a Monster mark or product in the document's body, subject line or title; and (2) its physical and electronic files for a Monster mark or product. | OPS will produce to additional emails responsive to this request that it has recently discovered. OPS is also attempting to obtain documents from OPS's previous trademark attorney, and will produce them or update its privilege log accordingly. | |

### C.   CORRESPONDENCE WITH CUSTOMERS RELATING TO A PRODUCT MARKETED UNDER A MONSTER MARK (RFP NO. 18)

**RFP No. 18:**

All documents that mention or refer to an OPS Mark, including documents that mention product names that include an OPS Mark (e.g., "MonsterFishingTackle.com Die-Cut Vinyl Sticker 9"x 3" – White").

**OPS's Response to RFP No. 18:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because they were of a limited run and early on in the existence of OUTDOOR PRO SHOP, INC. fliers and stickers and other promotional materials were delivered by hand and much of the record concerning the same are no longer in existence. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require several days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things within the possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents. Additionally, OUTDOOR PRO SHOP, INC. will produce a compilation set forth in an Excel spreadsheet including 163,151 entries showing products sold on the website.  of OUTDOOR PRO SHOP, INC. once a confidentiality agreement is set forth as disclosure of this material is objected to as contained highly confidential and proprietary business information of OUTDOOR PRO SHOP, INC.

**OPS's Supplemental Response to RFP No. 18:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the

instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because they were of a limited run and early on in the existence of OUTDOOR PRO SHOP, INC. fliers and stickers and other promotional materials were delivered by hand and much of the record concerning the same are no longer in existence. In addition, upon a reasonable and diligent search there are some communications that would satisfy the request that are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. because the same never existed with respect to communications with vendors and inter-office communications as much of the interactions between vendors and inter-office personnel was don over the telephone or by word of mouth, i.e., face-to-face communication aka known as the sneaker-net. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require several days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor. With respect to documents and things within the possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS is not aware of any customer correspondence other than customer invoices. OPS has disclosed invoices evidencing date of first use in commerce. As a compromise, OPS is willing to disclose all of its customer invoices if this is what Monster means by "customer correspondence." | |

## D.   DOCUMENTS RELATING TO OPS'S ADOPTION OF ITS MONSTER MARKS (RFP NOS. 19, 21)

**RFP No. 19:**

All documents relating to the origin, conception, or adoption of the OPS Marks, including, but not limited to, documents relating to how You created, conceived, selected or acquired the OPS Marks.

**OPS's Response to RFP No. 19:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because the concept resulted from decades of familiarity of the fishing trade, including magazines, newspaper reports and other documentation ordinarily perceived at fishing activities which were not collected or stored. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things with possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents. Additionally, OUTDOOR PRO SHOP, INC. will produce a compilation set forth in an Excel spreadsheet including 163,151 entries showing products sold on the website of OUTDOOR PRO SHOP, INC. once a confidentiality agreement is set forth as disclosure of this material is objected to as contained highly confidential and proprietary business information of OUTDOOR PRO SHOP, INC.

**OPS's Supplemental Response to RFP No. 19:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. In addition, upon a reasonable and

diligent search there are some of the that would satisfy request are not within the possession, custody or control of OUTDOOR PRO SHOP, INC. as the same are no longer in existence, because the concept resulted from decades of familiarity of the fishing trade, including magazines, newspaper reports and other documentation ordinarily perceived at fishing activities which were not collected or stored. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things with possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents.

## RFP No. 21:

Any physical or electronic files for an OPS Mark, including any design or development files.

## OPS's Response to RFP No. 21:

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this reque and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. Additionally, OUTDOOR PRO SHOP, INC. also objects to this request as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY for the phrases "design or development files". OUTDOOR PRO SHOP, INC. interprets this phrase a meaning copies of the evolution of the OPS Marks from inception to present day. In light of the foregoing interpretation of the phrase "design or development files" OUTDOOR PRO SHOP, INC. objects to the request as being duplicative as documents demonstrating the first use of the marks up to today have been previous provided in response to the earlier set of request for production numbers 1-14 propounded by Requesting Party upon OUTDOOR PRO SHOP, INC. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things within possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/ service mark applications and associated documents.

**OPS's Supplemental Response to RFP No. 21:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this request and more specifically, Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. Additionally, OUTDOOR PRO SHOP, INC. also objects to this request as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY for the phrases "design or development files". OUTDOOR PRO SHOP, INC. interprets this phrase a meaning copies of the evolution of the OPS Marks from inception to present day. In light of the foregoing interpretation of the phrase "design or development files" OUTDOOR PRO SHOP, INC. objects to the request as being duplicative as documents demonstrating the first use of the marks up to today have been previous provided in response to the earlier set of request for production numbers 1-14 propounded by Requesting Party upon OUTDOOR PRO SHOP, INC. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ that is equally available to requesting party and will not be produced therefor.. With respect to documents and things within possession custody or control of OUTDOOR PRO SHOP, INC. and without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents, such as pending trademark/service mark applications and associated documents and will allow inspection of its facilities so that MONSTER ENERGY COMPANY can inspect its software system and printing machines that are responsive to this request.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS is attempting to obtain responsive documents, if any, from Andrew Pharar. If it receives any, it will produce them or update the privilege log accordingly. | |

### E.   OPS'S EVIDENCE OF ITS FIRST USE IN COMMERCE OF ITS MONSTER MARKS IN EACH DISPUTED PRODUCT CATEGORY (ROG NO. 1)

**ROG No. 1:**

For each category of product (goods or services) identified in Monster's Request for Production Nos. 1-13, describe the first use in commerce of the OPS marks in that product category. Your description should at least include the names and model numbers of the first product(s) sold under an OPS Mark in the product category; the specific OPS mark(s) used in connection with each of those products and the manner in which each mark was used (e.g., printed on the product, displayed on the packaging); where each of those products was sold (e.g., online, in OPS stores, through catalogs) and its retail price; the time period during which each of those products was offered for sale; and the date each of those products was first sold.

**OPS's Response to ROG No. 1:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY with respect to the term "where ". In its normal sense the term where is a geographic locator and is interpreted as such. Moreover, clarification provided "e.g., online, in OPS stores, through catalogs" does not assist, because selling online is the same as selling through a catalog. In fact, NICE CLASSIFICATION includes a class for electronic catalog sales. Thus, there is no distinction between online and catalog sells and merely adds to the ambiguity and therefore, the unintelligibility of the interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being overly broad in that is seeks confidential information as to which manner of business is more lucrative for OUTDOOR PRO SHOP, INC., and can provided MONSTER ENERGY COMPANY a competitive advantage as it can use this discovery to more advantageously compete with OUTDOOR PRO SHOP. Along those lines information concerning the manner in which sales are effectuated, brick and mortar, online catalogs, etc. is irrelevant to the issues presented in this action and not reasonably calculated to lead to the discovery of admissible evidence. The use in commerce has been clearly defined as being commensurate with the definition being commensurate with 15 U.S.C. § 1127. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as overly broad as being unduly burdensome and oppressive considering that OUTDOOR PRO SHOP has approximately 36,000 products that it sales through its website rendering impossible to every product sold as much of the information is not readily obtainable . Moreover, compiling a list of every product by which to make a determination and to provide the parameters required by this interrogatory could easily result in years of work. Assuming, *arguendo*, 100 products sold per day over 21 years, the interrogatory could be interpreted as requesting over 750,000 data points for which you request different characteristics of each data point, which may require analyzing approximately 5,250,000 data points examined. This is clearly overly burdensome. OUTDOOR PRO SHOP, INC.

interprets the term "product category", which is unintelligible for not being defined by MONSTER ENERGY COMPANY as being products associated with a particular Nice Classification so that were there multiple products contained in a single trademark/service mark class OUTDOOR PRO SHOP, INC. interprets the interrogatory as requesting only the first sale of one of the products of said class and the first date of sale of each product within a particular class, as opposed to each sale of a particular product. Without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained, with the understanding that each of the OPS marks shown therein is continued to be used as of the date of this response: Bates numbers: P000001- P000114.

**OPS's First Supplemental Response to ROG No. 1:**

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY with respect to the term "where ". In its normal sense the term where is a geographic locator and is interpreted as such. Moreover, clarification provided "e.g., online, in OPS stores, through catalogs" does not assist, because selling online is the same as selling through a catalog. In fact, NICE CLASSIFICATION includes a class for electronic catalog sales. Thus, there is no distinction between online and catalog sells and merely adds to the ambiguity and therefore, the unintelligibility of the interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being overly broad in that is seeks confidential information as to which manner of business is more lucrative for OUTDOOR PRO SHOP, INC., and can provided MONSTER ENERGY COMPANY a competitive advantage as it can use this discovery to more advantageously compete with OUTDOOR PRO SHOP. Along those lines information concerning the manner in which sales are effectuated, brick and mortar, online catalogs, etc. is irrelevant to the issues presented in this action and not reasonably calculated to lead to the discovery of admissible evidence. The use in commerce has been clearly defined as being commensurate with the definition being commensurate with 15 U.S.C. § 1127. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as overly broad as being unduly burdensome and oppressive considering that OUTDOOR PRO SHOP has approximately 36,000 products that it sales through its website rendering impossible to every product sold as much of the information is not readily obtainable . Moreover, compiling a list of every product by which to make a determination and to provide the parameters required by this interrogatory could easily result in years of work. Assuming, *arguendo*, 100 products sold per day over 21 years, the interrogatory could be interpreted as requesting over 750,000 data points for which you request different characteristics of each data point, which may require analyzing approximately 5,250,000 data points examined. This is clearly overly burdensome. OUTDOOR PRO SHOP, INC. interprets the term "product category", which is unintelligible for not being defined by MONSTER ENERGY COMPANY as being products associated with a particular Nice Classification so that were there multiple products contained in a single trademark/service mark class OUTDOOR PRO SHOP, INC. interprets the interrogatory as requesting only the first sale of one of the products of said class and the first date of sale of each product within a particular class, as opposed to each sale of a particular product. Without waiving the

foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained, with the understanding that each of the OPS marks shown therein is continued to be used as of the date of this response: Bates numbers: P000001- P000114. With respect to Interrogatory Number 1, all relevant sales were online. Document number P000114 is a list of the relevant sales information for said sales. Specifically, column B of P000114 is a description of the good category in which sales occurred. Column C indicates the date of the sale. Column D indicates the order number. Many of these orders have been produced. In fact when there is an order number, it has been produced. If an order number is omitted, there was no corresponding document to produce. Column E is a detailed description of the item sold. As noted there are other trademarks associated with the items, because these are online sales. As a result, it is the electronic catalog through which these sales have occurred. Therefore, third party products are also the subject of the sales.

## OPS's Second Supplemental Response to ROG No. 1:

OUTDOOR PRO SHOP, INC. incorporates its General Objections in response to this interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being unintelligible resulting from the definition, or lack thereof, provided by MONSTER ENERGY COMPANY with respect to the term "where ". In its normal sense the term where is a geographic locator and is interpreted as such. Moreover, clarification provided "e.g., online, in OPS stores, through catalogs" does not assist, because selling online is the same as selling through a catalog. In fact, NICE CLASSIFICATION includes a class for electronic catalog sales. Thus, there is no distinction between online and catalog sells and merely adds to the ambiguity and therefore, the unintelligibility of the interrogatory. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as being overly broad in that is seeks confidential information as to which manner of business is more lucrative for OUTDOOR PRO SHOP, INC., and can provided MONSTER ENERGY COMPANY a competitive advantage as it can use this discovery to more advantageously compete with OUTDOOR PRO SHOP. Along those lines information concerning the manner in which sales are effectuated, brick and mortar, online catalogs, etc. is irrelevant to the issues presented in this action and not reasonably calculated to lead to the discovery of admissible evidence. The use in commerce has been clearly defined as being commensurate with the definition being commensurate with 15 U.S.C. § 1127. OUTDOOR PRO SHOP, INC. also objects to this interrogatory as overly broad as being unduly burdensome and oppressive considering that OUTDOOR PRO SHOP has approximately 36,000 products that it sales through its website rendering impossible to every product sold as much of the information is not readily obtainable . Moreover, compiling a list of every product by which to make a determination and to provide the parameters required by this interrogatory could easily result in years of work. Assuming, *arguendo*, 100 products sold per day over 21 years, the interrogatory could be interpreted as requesting over 750,000 data points for which you request different characteristics of each data point, which may require analyzing approximately 5,250,000 data points examined. This is clearly overly burdensome. OUTDOOR PRO SHOP, INC. interprets the term "product category", which is unintelligible for not being defined by MONSTER ENERGY COMPANY as being products associated with a particular Nice Classification so that were there multiple products contained in a single trademark/service mark class OUTDOOR PRO SHOP, INC. interprets the interrogatory as requesting only the first sale of one of the products of said class

and the first date of sale of each product within a particular class, as opposed to each sale of a particular product. Without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained, with the understanding that each of the OPS marks shown therein is continued to be used as of the date of this response: Bates numbers: P000001- P000114, with the understanding that P000077 is a 30oz version of the Monster Mug and P000039 refers to a 20oz Monster Mug having the same logo as seen in P000077.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| OPS should supplement its interrogatory response to identify all its first-use evidence or confirm that it has done so. | OPS will provide Monster with access to its point-of-sale system should it wish to extract more detailed data that OPS has previously provided. OPS will also be supplementing its response to provide further detail. | |

## F.    OPS'S EXPENDITURES ON ADVERTISEMENTS AND PROMOTION RELATING TO ITS MONSTER MARKS (ROG NO. 6)

**ROG No. 6:**

Describe in detail Your expenditures on advertising, marketing and promoting the OPS Marks since 2000, including by identifying, on an annual basis, the total amount You spent and the amount You paid to each third party, and by providing the production numbers of any documents showing that you made a payment to advertise, market or promote the OPS Marks.

**OPS'S Response to ROG No. 6:**

OUTDOOR PRO SHOP, INC. also objects to the request as it seeks documents reciting confidential business information, such as the name and address of purchasers who have acquired goods used in connection with OPS marks. OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000221-P000268 and will provide said documents once a confidential agreement is executed between MONSTER ENERGY COMPANY and OUTDOOR PRO SHOP, INC.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS will supplement its response to produce expenditures related to its maintenance of the monsterfishing.com domain name. | |

### G.   FINANCIAL INFORMATION RELATED TO OPS'S SALE OF PRODUCTS UNDER ITS MONSTER MARKS (ROG NO. 8; RFP NOS. 54-57)

**ROG No. 8:**

State Your gross profits, costs and net profits, on an annual basis since 2000 and before taxes, for each product (good or service) sold under an OPS Mark (identified by product name and catalog/model number).

**OPS's Response to ROG No. 8:**

OUTDOOR PRO SHOP, INC. object to this interrogatory based upon the irrelevance of any information before the creation of the OPS Marks that occurred in 2008 and as a result will not provide information in response to this interrogatory concerning any matters before 2008. OUTDOOR PRO SHOP, INC. also objects to the request as it seeks documents reciting confidential business information, such as the name and address of purchasers who have acquired goods used in connection with OPS marks. OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000221-P000268 and will provide said documents once a confidential agreement is executed between MONSTER ENERGY COMPANY and OUTDOOR PRO SHOP, INC.

**RFP No. 54:**

Documents sufficient to show the wholesale and retail prices, on an annual basis, for each product or service sold under an OPS Mark.

**OPS's Response to RFP No. 54**

OUTDOOR PRO SHOP, INC. objects to the request as it seeks documents reciting confidential business sales information along with the pricing information. Without waiving the foreoing objection OUTDOOR PRO SHOP, INC. will produce documents within its possession, custody or control that satisfy this request with respect once a confidential agreement is executed between MONSTER ENERGY COMPANY and OUTDOOR PRO SHOP, INC.

**OPS's Supplemental Response to RFP No. 54**

OUTDOOR PRO SHOP, INC. objects to the request as it seeks documents reciting confidential business sales information along with the pricing information. Without waiving the foreoing objection OUTDOOR PRO SHOP, INC. will produce documents within its possession, custody or control that satisfy this request.

**RFP No. 55:**

Documents sufficient to show Your sales in units and dollars, by month, for each product or service sold under an OPS Mark.

**OPS's Response to RFP No. 55**

OUTDOOR PRO SHOP, INC. objects to the request as it seeks documents reciting confidential business sales information along with the pricing information. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome because in order to determine net profits OUTDOOR PRO SHOP, INC. would have to change accounting and system and re-introduce data into the same. OUTDOOR PRO SHOP, INC. states that it has undertaken a diligent search and reasonable inquiry to locate the documents responsive to this request and is unable to comply because said documents never existed. However, OUTDOOR PRO SHOP, INC. has data associated with a point of sale system that it has attempted to provide in the categories a request, but is not able to do so.

**RFP No. 56:**

Documents sufficient to show Your gross profits, costs and net profits, on an annual basis and before taxes, for each good or service sold under an OPS Mark

**OPS's Response to RFP No. 56**

OUTDOOR PRO SHOP, INC. objects to the request as it seeks documents reciting confidential business sales information along with the pricing information. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome because in order to determine net profits OUTDOOR PRO SHOP, INC. would have to change accounting and system and re-introduce data into the same. OUTDOOR PRO SHOP, INC. states that it has undertaken a diligent search and reasonable inquiry to locate the documents responsive to this request and is unable to comply because said documents never existed. However, OUTDOOR PRO SHOP, INC. has data associated with a point of sale system that it has attempted to provide in the categories a request, but is not able to do so.

**RFP No. 57:**

For each product or service sold under an OPS Mark, documents sufficient to show Your total cost associated with that product or service, excluding overhead, as well as the individual components of that cost, including but not limited to manufacturing costs, shipping costs, advertising costs and sales costs.

**OPS's Response to RFP No. 57**

OUTDOOR PRO SHOP, INC. objects to the request as it seeks documents reciting confidential business sales information along with the pricing information. OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome because in order to determine net profits OUTDOOR PRO SHOP, INC. would have to change accounting and system and re-introduce data into the same. OUTDOOR PRO SHOP, INC. states that it has undertaken a diligent search and reasonable inquiry to locate the documents responsive to this request and is unable to comply because said documents never existed. However, OUTDOOR PRO SHOP, INC. has data associated with a point of sale system that it has attempted to provide in the categories a request, but is not able to do so.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS will provide Monster with access to its point-of-sale system should it wish to extract more detailed data that OPS has previously provided. | |

## H.     ALLEGED INSTANCES OF ACTUAL CONFUSION (ROG NOS. 10, 12; RFP NO. 74)

**ROG No. 10:**

Describe in detail the factual bases for Your claim that Monster has infringed Your alleged rights in the OPS Marks, including by identifying (by product name or product category) the Monster goods and services that You contend infringe, the specific marks that are allegedly infringed by each Monster product or product category, any facts that support Your view that there is a likelihood of consumer confusion, and any documents that evidence the facts identified in Your response.

**OPS's Response to ROG No. 10:**

OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000115-P000220.

**OPS's Supplemental Response to ROG No. 10:**

OUTDOOR PRO SHOP, INC. states that the use of the term MONSTER on several products, such as shirts in which it appears as the dominant portion of its trademark M MONSTER ENERGY is likely to cause confusion with OUTDOOR PRO SHOP, INC.'s mark MONSTER on class 25 goods, namely shirts. Additionally, OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000115-P000220; MEC 023851-53; MEC023856-867; MEC 23882; MEC023908-910; MEC23943, MEC23945, MEC023976, MEC023977; MEC023982.

**ROG No. 12:**

Describe any instances of actual confusion between (1) You, any OPS Mark, or any good or service sold under an OPS Mark, and (2) Monster, a Monster Mark, or any Monster Good or Service.  Your description should include an identification of all persons with knowledge of the alleged incidents and the production numbers all documents relating to the alleged incidents.

**OPS's Response to ROG No. 12:**

OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000115-P000220.

**RFP No. 74:**

All documents concerning any alleged instance of confusion, mistake, deception, and/or association of any kind between OPS, Monster, OPS's goods and services and/or Monster's Goods and Services.

**OPS's Response to RFP No. 74:**

All documents concerning any alleged instance of confusion, mistake, deception, and/or association of any kind between OPS, Monster, OPS's goods and services and/or Monster's Goods and Services.

**OPS's Supplemental Response to RFP No. 74:**

Additionally, OUTDOOR PRO SHOP, INC. objects based upon this request seeking documents containing Attorney-Client communications, such as communications between OUTDOOR PRO SHOP, INC. and its attorneys with respect to the preparation and filing of United States Trademark Applications for said marks and related to the instant action, as well as attorney work product, such as notes and mental impressions of the attorney with respect to the attorney's representation of OUTDOOR PRO SHOP, INC. in the instant matter and before the United States Trademark Office, none of which will be produced. Additionally, OUTDOOR PRO SHOP, INC. also objects to this request pursuant to Fed R. Civ. P. 26(b)(1) as being unduly burdensome in that it would require days of work compiling information from various sources, more particularly the Waybackmachine available at the URL http://web.archive.org/ and includes documents produced by MONSTER ENERGY COMPANY in response to discovery propounded upon it during this litigation by OUTDOOR PRO SHOP, INC. , e.g., ; MEC 023851-53; MEC023856-867; MEC 23882; MEC023908-910; MEC23943, MEC23945, MEC023976; MEC023977; MEC023982 all of which are equally available to requesting party and will not be produced therefor. Without waiving the foregoing objections and in light of the foregoing clarification, OUTDOOR PRO SHOP, INC. will produce documents within its possession, custody or control that satisfy this request.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS does not propose a compromise for this dispute. | |

## I.     THE FACTS AND EVIDENCE SUPPORTING OPS'S CLAIM THAT ITS MARKS HAVE GAINED SECONDARY MEANING (ROG NO. 13)

**ROG No. 13:**

For each OPS Mark that You contend has acquired secondary meaning, describe in detail the factual basis for Your contention, including by identifying the date by which you contend the mark acquired secondary meaning and all documents that support Your contention.

**OPS's Response to ROG No. 13:**

OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000115-P00022.

**OPS's Supplemental Response to ROG No. 13:**

OUTDOOR PRO SHOP, INC. elects to respond to this interrogatory by specifying the following records from which the answer may be derived or ascertained by reference to bates numbers: P000001-P000045; P000087-P000114; P000115-P000220; P004301-P004315; P004300-P004315, P004317-P004322; and P004343-P004344. In addition, OUTDOOR PRO SHOP, INC. states that its principal and several employees have over the years appeared a various fishing tournaments/competition, fishing retail shows to discuss and provide handouts using the OPS marks that incorporate the MONSTER term to advertise its goods and its store and website presence in addition to several years of advertising the mark in various fishing journals and online at its website outdorrproshop.com which may also be reached through the url monsterfishingtackle.com. Additionally, OUTDOOR PRO SHOP, INC. contends that the inherent distinctiveness of the OPS Marks coupled with the vast advertising and using of said OPS Marks for over a decade had generated secondary meaning. The inherent distinctiveness of the marks requires consideration of how OUTDOOR PRO SHOP, INC. decides to create marks. More specifically, OUTDOOR PRO SHOP, INC.' principal, Kenneth S. Elie, decides upon the use of OPS marks after consideration of terms he perceived vis-à-vis years of life experience with fishing while learning the language and nomenclature used by anglers at numerous events, including fishing competitions, sales of goods and service related to fishing, and general social activities both in the United States, and around the globe on land and sea. Information acquired from participating in these activities led Mr. Elie to recognize a term, MONSTER FISH,that he desired to be included in a trademark for products that he intended to sell through his business Outdoor Pro Shop, Inc.: fishing tackle. The term MONSTER FISH has associated with it positive experiences amongst anglers with nearly universal consensus that it is the goal of the fishing experience: to catch a MONSTER FISH. As a result, Mr. Elie believes that anglers associate the term MONSTER FISH with friendly, helpful, or cooperative feelings or attitudes when fishing or discussing fishing experiences. Confirmation of Mr. Elie's belief was realized through a search of the internet of the term "monster fish". The

search results provides a number of uses of the term "monster fish" in excess of 350,000,000. Realizing that the term was extensively used by an overwhelming number of people, Mr. Elie decided that it would be suitable to include the term in a mark used to identify the source and quality of the fishing tackle sold by Outdoor Pro Shop, Inc. so as to suggest that those who use the fishing tackle would catch a MONSTER FISH; hence, the mark MONSTER FISHING TACKLE was created so as to suggest that the use of products from Outdoor Pro Shop, Inc. would result in an angler catching the MONSTER FISH. Based upon the foregoing, the suggestiveness of the OPS Marks cannot be overstated and gives rise to the secondary meaning of the marks when coupled with the long use, superior products and advertising activity that OUTDOOR PRO SHOP, INC. has undertake for the better part of 13 years. Additionally, OUTDOOR PRO SHOP, INC., incorporates its response to Interrogatory No. 7 as if fully set forth herein.

| Monster's Compromise | OPS's Compromise | Court's Use |
|---|---|---|
| Monster does not propose a compromise for this dispute. | OPS does not propose a compromise for this dispute. | |