UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| OUTDOOR PRO SHOP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MONSTER ENERGY COMPANY,<br><br>Defendant. | Case No. 20-cv-05999-BLF   (VKD)<br><br>**ORDER RE FEBRUARY 16, 2022<br>DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 42 |

Plaintiff Outdoor Pro Shop, Inc. ("OPS") and defendant Monster Energy Company ("Monster") ask the Court to resolve several disputes concerning Monster's discovery from OPS. Dkt. No. 42. The Court held a hearing on the matter on March 8, 2022. Dkt. No. 44.

For the reasons explained at the hearing and below, the Court resolves the disputes as set forth below.

I.      BACKGROUND

OPS asserts claims for trademark infringement, false designation of origin, and unfair competition against Monster. Dkt. No. 25. Monster denies liability, and asserts its own claims for trademark infringement, false designation of origin, and unfair competition against OPS. Dkt. No. 26. OPS denies it is liable to Monster. Dkt. No. 27. Among other things, the parties dispute (1) the strength of the parties' marks, (2) the nature, extent, and timing of the parties' use of the marks in commerce, (3) the similarity of the parties' goods and services, (4) whether and under what circumstances there is likelihood of confusion, and (5) whether either party has suffered damages, and if so, in what amount.

## II.    DISCUSSION

### A.    Legal Standard

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

### B.    Documents regarding advertising and promotion of OPS Marks

Monster's RFP 14 asks for: "All advertisements, catalogs, brochures, mailers, marketing emails, videos, fliers and other marketing materials that OPS purchased or disseminated since 2000."  Monster's RFP 36 asks for: "All catalogs, print advertisements and television/radio spots that OPS has distributed or placed since 2000, whether or not they relate to the OPS Marks,[1] and all banners, website ads, social media ads/posts or other promotional items that You have used to promote the OPS Marks since 2000."  OPS objects that it should not be required to produce responsive documents that do not include the disputed OPS Marks or the word "Monster."  Monster argues that OPS claims to have engaged in extensive advertisement and promotion of the OPS Marks, and that the disputed discovery is directed to evidence supporting or undermining that claim.

OPS's use of the disputed marks in advertising or promotion may be considered in assessing whether the marks have acquired secondary meaning.[2]  *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) (secondary meaning can be established through amount and manner of advertising)).  In addition, the timing of OPS's use in commerce of the disputed marks bears on the issue of priority.  OPS must produce documents in its possession, custody or control sufficient to show all advertising and promotion (in whatever form) that included the OPS Marks or the word "Monster" since 2000.  OPS may not satisfy its

---

[1] Monster defines "OPS Marks" as: "the marks MONSTER FISHING, MONSTER FISHING TACKLE, MONSTERFISHING.COM and any variations thereof."  Dkt. No. 42-6 at 2.
[2] OPS contends that some of the OPS Marks have inherent distinctiveness, while other have acquired distinctiveness.  *See* Dkt. No. 25 ¶ 6.  Monster contends that its MONSTER Marks are inherently distinctive and famous.  Dkt. No. 26 ¶ 24.

United States District Court
Northern District of California

obligation to produce this discovery by referring Monster to third party publications if OPS has responsive documents in its possession, custody, or control. The Court will not require OPS to produce documents showing advertising and promotion that does not include the OPS Marks or the word "Monster."

### C. Internal document referring to OPS Marks/products

Monster's RFP 18 asks for: "All documents that mention or refer to an OPS Mark, including documents that mention product names that include an OPS Mark (e.g., Monster FishingTackle.com Die-Cut Vinyl Sticker 9"x 3" – White")." For purposes of this dispute, Monster asks the Court to order OPS to produce (1) internal correspondence and memos that mention a Monster mark or product in the document's body, subject line, or title; and (2) physical and electronic files for a Monster mark or product. Dkt. No. 42-1 at 6. OPS represents that it will produce additional emails responsive to this request that it has recently discovered and is seeking responsive documents from OPS's previous trademark attorney, some of which may be privileged. *Id.*

OPS must perform a diligent search of email and other electronically stored files that include a reference to an OPS Mark. The Court anticipates that conventional methods for collection of ESI and application of search terms, consistent with the parties' Stipulated ESI Order (Dkt. No. 33), may be used to efficiently identify responsive documents. Responsive documents must then be produced to Monster, unless they are subject to a claim of privilege or other protection, in which case the privileged or protected document must be identified in a privilege log. *See* Fed. R. Civ. P. 26(b)(5). OPS must also perform a diligent search of physical files for responsive documents that include a reference to an OPS Mark. Such search must include locations that are reasonably likely to contain responsive documents. OPS need not search for responsive documents from sources that are not within its possession, custody, or control, such as third-party websites.

Documents in the possession of current or former counsel held in the course of the attorney-client relationship between counsel and OPS generally are considered within OPS's possession, custody, or control. *See, e.g., Fidelity Nat'l Title Ins. Co. v. Castle*, No. 11-CV-896

YGR, 2014 WL 3945590, at *2 (N.D. Cal. Aug. 11, 2014) (documents in defendant's "possession, custody, and control" included those "in the control of his current and former counsel"); *Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114 – 15 (S.D.N.Y. Aug. 8, 2001) (citing "general rule that a document held by prior counsel is deemed to be in a client's possession"). OPS shall request its prior trademark attorney to provide any such responsive, non-privileged documents to OPS.

### D.    Documents relating to OPS's adoption of OPS Marks

Monster's RFP 19 asks for: "All documents relating to the origin, conception, or adoption of the OPS Marks, including, but not limited to, documents relating to how You created, conceived, selected or acquired the OPS Marks." Monster's RFP 21 asks for: "Any physical or electronic files for an OPS Mark, including any design or development files." Monster says that OPS has produced no documents reflecting its conception or adoption of the OPS Marks. Monster argues that it is implausible, given OPS's assertions about the marks, that no such documents exist. OPS responds that it has answered an interrogatory describing how the idea for the name "Monster Fishing Tackle" came to Mr. Elie, its President, and that it has no responsive documents.

The Court is not persuaded that OPS has made a diligent search for responsive documents. It must do so now. It is not sufficient to rely on an interrogatory answer to respond to a request for production of documents. If, after a diligent search, OPS concludes that it has no responsive documents that reflect the origin, conception, creation, development, selection, adoption, or acquisition of the OPS Marks, it shall so state.

### E.    Evidence of OPS's first use in commerce

Monster's Interrogatory 1 asks: "For each category of product (goods or services) identified in Monster's Request for Production Nos. 1-13, describe the first use in commerce of the OPS marks in that product category. Your description should at least include the names and model numbers of the first product(s) sold under an OPS Mark in the product category; the specific OPS mark(s) used in connection with each of those products and the manner in which each mark was used (e.g., printed on the product, displayed on the packaging); where each of those products was sold (e.g., online, in OPS stores, through catalogs) and its retail price; the time

United States District Court
Northern District of California

1  period during which each of those products was offered for sale; and the date each of those

2  products was first sold."  Monster says that OPS's response to this interrogatory is incomplete.

3  OPS responds that it is prepared to supplement its response to provide further detail.  It also offers

4  to allow Monster access to OPS's "point of sale" system.  Dkt. No. 42-1 at 15.

5      In some circumstances, a party may appropriately respond to an interrogatory by producing

6  business records.  *See* Fed. R. Civ. P. 33(d).  However, the option to produce business records in

7  lieu of providing a written answer to an interrogatory may only be invoked if "the burden of

8  deriving or ascertaining the answer will be substantially the same for either party."  *Id.*  The Court

9  is not persuaded that the documents OPS has already produced, or the documents available in its

10  "point of sale" system, satisfy this requirement.  Accordingly, OPS must provide a complete,

11  written response to this interrogatory.  If OPS does not have all of the information requested by

12  this interrogatory, it must make clear in its answer which information it does not have.

13      **F.      Financial records and information**

14      Monster's Interrogatory 6 asks: "Describe in detail Your expenditures on advertising,

15  marketing and promoting the OPS Marks since 2000, including by identifying, on an annual basis,

16  the total amount You spent and the amount You paid to each third party, and by providing the

17  production numbers of any documents showing that you made a payment to advertise, market or

18  promote the OPS Marks."  Monster's Interrogatory 8 asks: "State Your gross profits, costs and net

19  profits, on an annual basis since 2000 and before taxes, for each product (good or service) sold

20  under an OPS Mark (identified by product name and catalog/model number)."  Monster's RFPs

21  54-57 ask for records sufficient to show OPS's prices for goods and services sold under an OPS

22  Mark, monthly sales for such goods and services, and profits and costs for such goods and

23  services.

24      During the hearing on this matter, OPS represented that it is prepared to produce an

25  electronic spreadsheet showing its expenditures on advertising, marketing, and promotion of the

26  OPS Marks, responsive to Interrogatory 6.  OPS shall promptly produce the spreadsheet to

27  Monster.

28      As for the information and records sought in Interrogatory 8 and RFPs 54-57, OPS insists

1  that it does not know how to extract responsive information from its own systems and records.

2  Ordinarily, such a response would not be acceptable.  However, given the late stage of discovery

3  in this case, the Court orders as follows:  If responsive information and documents are, in fact,

4  available in one or more electronic systems maintained by OPS, OPS may satisfy its obligations to

5  provide information and documents responsive to these discovery requests by making the systems

6  available for inspection by Monster and, if necessary, Monster's expert or consultant, consistent

7  with the terms of the protective order (Dkt. No. 36).  The Court expects OPS to facilitate

8  Monster's access to these systems and the information they contain, including by making someone

9  available to answer questions about the operation of the systems and accessing responsive

10  information within the systems.  Upon Monster's application, the Court will consider shifting the

11  reasonable costs associated with extracting responsive information and documents from OPS's

12  systems from Monster to OPS.

13  **G.     Instances of actual confusion**

14  Monster's Interrogatory 12 asks: "Describe any instances of actual confusion between (1)

15  You, any OPS Mark, or any good or service sold under an OPS Mark, and (2) Monster, a Monster

16  Mark, or any Monster Good or Service. Your description should include an identification of all

17  persons with knowledge of the alleged incidents and the production numbers all documents

18  relating to the alleged incidents."  OPS has responded to this interrogatory by referring Monster to

19  a portion of OPS's document production.  Monster says this response is insufficient because it

20  does not answer the interrogatory.

21  OPS must supplement its response to this interrogatory to identify all responsive instances

22  of actual confusion.  If it is not aware of any such instances of actual confusion, it shall so state.

23  **H.     Evidence of secondary meaning**

24  Monster's Interrogatory 13 asks: "For each OPS Mark that You contend has acquired

25  secondary meaning, describe in detail the factual basis for Your contention, including by

26  identifying the date by which you contend the mark acquired secondary meaning and all

27  documents that support Your contention."

28  Secondary meaning may be established by showing, among other things, actual confusion

United States District Court
Northern District of California

United States District Court
Northern District of California

by the relevant audience, survey evidence, the nature and extent of advertising or promotion involving the mark, the length and manner of use of the mark, and whether use of the mark has been exclusive.  *Filipino Yellow Pages,* 198 F.3d at 1151.  OPS's response to this interrogatory is not fully responsive and is insufficiently specific.  OPS must supplement its response to this interrogatory to identify the facts supporting its contention that each of the OPS Marks has acquired secondary meaning, and any supporting documents.  If it does not contend that a particular mark has acquired secondary meaning, it shall so state.

## III.    CONCLUSION

OPS must supplement its answers to interrogatories and its production of documents, as directed above, by **March 22, 2022**.  OPS and its counsel are reminded that the Federal Rules of Civil Procedure require a party's attorney to certify "to the best of [counsel's] knowledge, information, and belief formed after a reasonable inquiry" that the discovery response complies with the requirements of the Rules.  *See* Fed. R. Civ. P. 26(g)(1)(B)(i)-(iii).  The reasonableness of counsel's inquiry is measured by an objective standard and does not turn on a showing of good or bad faith.  *Optronic Tech., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 16-cv-06370-EJD, 2020 WL 2838806, at *3 (N.D. Cal. Jun. 1, 2020); *see also* Fed. R. Civ. P. 26 advisory committee's note, 1983 amdt., subdivision (g).

**IT IS SO ORDERED.**

Dated: March 11, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge